IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAFAEL MATEOS-SANDOVAL
and SIMEON AVENDANDO RUIZ,

                Plaintiffs,

       v.

COUNTY OF SONOMA, et al.,

                Defendants.

NO. C11-5817 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
MOTIONS TO DISMISS

Presently under consideration are two motions, filed by the County of Sonoma and the City of Santa Rosa, their law enforcement agencies and officials ("County Defendants" and "City Defendants," respectively), which, taken together, request dismissal of all claims presented in this suit. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART each motion.

**BACKGROUND**

This is a suit brought under 42 U.S.C. § 1983 and California Civil Code § 52.1 raising challenges to various aspects of Defendants' enforcement of California Vehicle Code § 14602.6, which authorizes the impoundment of a vehicle for thirty days under limited circumstances.[1] There are two named Plaintiffs in this action – Rafael Mateos-Sandoval, whose vehicle was impounded by County Defendants, and Simeon Avendando Ruiz – whose vehicle was impounded by City Defendants. Each Plaintiff raises five claims relating to Defendants' enforcement of § 14602.6(a)(1).

**A.  California Vehicle Code § 14602.6(a)(1)**

Section 14602.6(a)(1) provides:

> Whenever a peace officer determines that a person was driving a vehicle
> while his or her driving privilege was suspended or revoked, driving a vehicle

---

[1] Unless otherwise specified, citations to sections of California law are to the Vehicle Code.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

while his or her driving privilege is restricted pursuant to Section 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person. . . . A vehicle so impounded shall be impounded for 30 days.

Within two working days of an impoundment pursuant to § 14602.6(a)(1), the impounding agency must notify the vehicle's owner of the impoundment. Cal. Veh. Code § 14602.6(a)(2). The vehicle's owner "shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage, in accordance with Section 22852." Cal. Veh. Code § 14602.6(b). Section 22852 sets out the procedure for hearings to "determine the validity of the storage" and provides, among other things, that a "public agency may authorize its own officer or employee to conduct the hearing if the hearing officer is not the same person who directed the storage of the vehicle." Cal. Veh. Code § 22852(c).

### B.     Mateos-Sandoval

Plaintiffs allege that, on January 27, 2011, Mateos-Sandoval was driving his GMC Sierra pickup truck on Santa Rosa avenue when a Sonoma County Sheriff's Department (SCSD) deputy pulled him over. He stopped his truck at a safe and legal location by the street curb in front of a credit union parking lot. The truck was not blocking traffic.

The officer informed Mateos-Sandoval that his truck's trailer hitch was blocking its license plate and asked to see his driver's license. When Mateos-Sandoval responded that he had a driver's license from Mexico, the officer ordered the impoundment of Mateos-Sandoval's truck under § 14602.6(a)(1), and called for a tow truck.

While the officer and Mateos-Sandoval were still at the scene of the traffic stop, his friend Sonja Oralia Ortiz arrived. Ortiz told the officer that she had a California driver's license, and Mateos-Sandoval and Ortiz asked the officer to permit Ortiz to drive the truck away. The officer denied their request. The tow truck arrived and removed the truck. Mateos-Sandoval was not arrested, but he was charged with violating § 12500 of the

2

United States District Court

For the Northern District of California

California Vehicle Code, driving without a valid California driver's license, and § 5201,
relating to the proper mounting of license plates.  On March 28, 2011, Mateos-Sandoval
appeared in the Superior Court of the County of Sonoma, where he pled guilty to, and was
convicted of, the § 12500 charge.[2]  The § 5201 charge was dismissed.[3]

The next day, January 28, 2011, and again on January 31, 2011, Mateos Sandoval
went to the SCSD office, where he requested a hearing in order to get his truck back.  On
both occasions, SCSD personnel informed him that he was not eligible for a tow hearing and
refused to schedule one.

Later, Mateos-Sandoval received by mail a California Highway Patrol ("CHP") form
180, "Notice of Stored Vehicle."  The form stated, "[u]nder the provisions of Section 22852
VC, you have the right to a hearing to determine the validity of this storage."  (Docket No.
21, Exhibit A.)  The form did not specify why Mateos-Sandoval's truck was being
impounded for 30 days; it informed him only that it "was stored pursuant to the provisions of
the California Vehicle Code."  (Docket No. 21, Exhibit A.)

On February 1, 2011 and February 3, 2011, SCSD personnel informed Mateos-
Sandoval that the 30-day impound of his truck was required under § 14602.6(a)(1), even

---

[2]  The Vehicle Code exempts from § 12500's purview individuals who are not
California residents and are licensed to drive in other states or countries.  Cal. Veh. Code §
12502(a)(1).  Residency is defined as "a person's state of domicile."  *Id.*  Plaintiffs do not
allege that they were not domiciled in California when their trucks were impounded.

[3]  The Court GRANTS IN PART and DENIES IN PART County Defendants'
unopposed request for judicial notice.  The Court takes judicial notice of Mateos-Sandoval's
judgment of conviction for violating § 12500.  *See United States v. Lopez-Solis*, 447 F.3d
1201, 1210 (9th Cir. 2006).  The Court also takes notice of the existence of the judicial
opinions and complaint in the *Salazar* case, but not their factual content.  *See Lee v. City of
Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).  County Defendants' request is DENIED
with respect to the police report and police department records, with the exception of CHP
form 180, which is the only document that was incorporated by reference into the complaint.
*United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).  These documents are
improper subjects of judicial notice.  *See id.*; *United States v. Perez-Corona,* 295 F.3d 996,
1001 at n. 4 (9th Cir. 2002).  For purposes of the present motion, the Court treats the
documents of which it has taken notice as part of the complaint.  *See Ritchie*, 342 F.3d at
908.
        County Defendants' motion to strike the documents attached to Plaintiffs' Opposition
(Docket No. 32) is GRANTED because Plaintiffs do not request judicial notice of them, they
are not incorporated by reference in the complaint, and they do not form the basis of
Plaintiffs' claims.  *See Ritchie*, 342 F.3d at 907-08.

though he had a Mexican driver's license.  Mateos-Sandoval was denied the use of his truck

for over 30 days.  He seeks recovery for the resulting expenses, and for expenses incurred in

his attempts to recover his truck.

**C.    Avendando Ruiz**

Plaintiff Simeon Avendando Ruiz alleges that on or about September 1, 2011, he was

driving his Chevy Silverado pickup truck when he was stopped at a checkpoint by Santa

Rosa Police Department ("SRPD") officers.[4]  Without asking Avendando Ruiz whether he

had ever been licensed to drive in any jurisdiction, the officers ordered the impoundment of

his truck under § 14602.6(a)(1).  Avendando Ruiz had, in fact, been issued a Mexican

driver's license and alleges that he would have produced that license had the SRPD officers

asked him to do so.  Avendando Ruiz's truck was impounded for 30 days.  Avendando Ruiz

was not arrested but he was charged with violating § 12500 of the California Vehicle Code,

driving without a valid California driver's license.  On October 4, 2011, he appeared in the

Superior Court of the County of Sonoma, where he pled nolo contendere to, and was

convicted on, the § 12500 charge.[5]

Avendando Ruiz received a CHP form 180 in the mail.  On or about September 6,

2011, Avendando Ruiz, through his attorney, informed SRPD that he had a valid Mexican

driver's license and requested that SRPD release his truck.  SRPD refused on the ground that

§ 14602.6(a)(1), as interpreted by SRPD, mandated that his truck be impounded for 30 days.

Avendando Ruiz alleges that at all times while his truck was impounded, he was ready

and able to pay the storage fee and have a person with a California driver's license drive his

---

[4]  The vehicle code has since been amended to prohibit the impoundment under § 14602.6 of vehicles stopped at sobriety checkpoints based so on the fact that their drivers are unlicensed.  *See* Cal. Stats. 2011, c.653 (A.B. 353) § 2 (codified at Cal. Veh. Code § 2814.2(c)) (providing that vehicles encountered at sobriety checkpoints that are driven by unlicensed drivers shall be released to a licensed driver or, if that is not possible, removed under § 22651(p)).

[5]  The Court GRANTS City Defendants' request for judicial notice of the record of Avendando Ruiz's conviction for violating § 12500(a).  *See Lopez-Solis*, 447 F.3d at 1210 (9th Cir. 2006).  Their request is DENIED with respect to the police report and police department records. *See Perez-Corona,* 295 F.3d at 1001 at n. 4; *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985).

United States District Court
For the Northern District of California

truck away from the storage yard.  However, the defendants prevented him from doing so based on their policy of treating individuals with Mexican drivers licenses as individuals who have never been issued a driver's license for purposes of § 14602.6(a)(1).

Avendando Ruiz took possession of his truck after the expiration of the impoundment period by paying the accrued storage fees and an administrative fee charged by SRPD. Avendando Ruiz incurred costs as a result of the loss of the use of his truck for more than 30 days and his efforts to retrieve it, which he now seeks to recover.

**D.  The Complaint**

On December 2, 2011, Plaintiffs filed a complaint in this Court presenting claims for relief under 42 U.S.C. § 1983 and California Civil Code § 52.1.  They seek declaratory and injunctive relief, restitution, and damages on behalf of themselves and a statewide class of individuals who "have had cars seized/impounded for thirty days pursuant to § 14602.6, or may in the future have them so seized/impounded." (Docket No. 1, at p. 12.).  The complaint encompasses five claims, each alleged against all defendants, and a facial challenge to § 14602.6.

Plaintiffs contend that Defendants' seizure and impoundment of their trucks was unlawful and constituted an uncompensated taking; the hearing procedures provided by Defendants did not comport with the requirements of due process; the impoundment of their trucks constituted punishment without adequate procedural safeguards; and Defendants imposed excessive fees related to the impoundment of their trucks.  They ask the Court to declare § 14602.6 unconstitutional on its face and enjoin its enforcement.

**LEGAL STANDARD**

Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), for lack of standing and 12(b)(6), for failure to state a claim.  To state a claim, a complaint must contain "a short and plain statement" showing "the grounds for the court's jurisdiction" and "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe

United States District Court
For the Northern District of California

5

the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(1) if Plaintiffs do not carry their burden to sufficiently allege subject matter jurisdiction. Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails "to state a claim upon which relief can be granted." A complaint will survive a 12(b)(6) motion if its "non-conclusory factual content, and reasonable inferences from that content" plausibly suggest a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 555 U.S. 662 (2009)) (internal quotation marks omitted).

**DISCUSSION**

**A.      Global arguments for dismissal**

Defendants make several arguments for dismissal that apply to more than one of Plaintiffs' claims. The Court will address these arguments first, and then turn to Defendants' arguments for dismissal of each of the five counts set out in the complaint.

**1.      *Monell* claims against County Defendants**

County Defendants move for the dismissal of Plaintiffs' claims against the county and its officers acting in an official capacity, arguing that Plaintiffs have failed to allege plausible facts sufficient to support a claim that their injuries arose out of County Defendants' customs, practices, or policies. Section 1983 provides for a cause of action against any "person" who, acting under the color of law, subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

Section 1983 claims against government officials in their official capacities "are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 n. 8 (9th Cir. 2002); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991). Under *Monell v. Department of Social Services*, section 1983 plaintiffs cannot state a claim for municipal liability based on a *respondeat superior* theory of liability. 436 U.S. 658, 691 (1978). However, a municipal government entity may be

held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Section 1983 plaintiffs cannot state a claim for municipal liability based on a *respondeat superior* theory. *Id*. at 694.

The longstanding rule in the Ninth Circuit, set out in *Karim-Panahi v. Los Angeles Police Dept*., was that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice.'" 839 F.2d 621, 624 (9th Cir. 1988), *quoting Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986). The Supreme Court, in *Leatherman v. Tarrant Narcotics Intelligence and Coordination Unit*, cited with approval to *Karim-Panahi* in rejecting a "heightened pleading standard" for *Monell* claims. 507 U.S. 163, 165-68 (1993). *Karim-Panahi* has not been overruled, but the Ninth Circuit has recognized that, under the Supreme Court's recent pleading jurisprudence, it is no longer clear that bare allegation that an officer's conduct "conformed to official policy, custom, or practice" continues to be sufficient to state a claim under *Monell*. *See A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Iqbal*, 556 U.S. at 678.

In *Starr v. Baca*, the Ninth Circuit attempted to reconcile the apparent inconsistency between *Twombly* and *Iqbal* and other recent Supreme Court cases construing Rule 8(a) in a way that permits more claims to go forward. 652 F.3d 1202, 1213-16 (9th Cir. 2011). The court synthesized the following two-part rule:

> First, to be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id*. at 1216.

7

Recently, in *A.E. ex rel. Hernandez v. County of Tulare*, the Ninth Circuit applied the *Starr* standard to a *Monell* claim.  666 F.3d at 637-38.  The plaintiff in *A.E.* was a minor who was sexually abused while in foster care.  He alleged that the county was liable under *Monell* because the defendants "performed their acts and omissions 'under the ordinances, regulations, customs, and practices of Defendant COUNTY OF TULARE . . . '" and "'maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs'" that were alleged elsewhere in the complaint.  *Id.* at 635 (quoting complaint).  Applying *Starr*, the court held that these allegations were insufficient to state a claim, but it directed the district court to grant the plaintiffs leave to amend their complaint to state additional facts supporting the claim that the "alleged constitutional violations were carried out pursuant to County policy or custom."  *Id.* at 637.

In the present case, as in *A.E.*, Plaintiffs base their *Monell* claims on the theory that County Defendants had deliberate customs, policies, or practices that were "the 'moving force' behind the constitutional violation [Plaintiffs] suffered."  *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694-95).  But Plaintiffs' allegations, in contrast those offered by the plaintiffs in *A.E.*, specify the content of the policies, customs, or practices the execution of which gave rise to Plaintiffs' Constitutional injuries.  *See Monell*, 436 U.S. at 694.  Plaintiffs allege that County Defendants "routinely enforce" § 14602.6 by:

> seizing and impounding vehicles on the basis that the driver does not have a current, valid California driver's license, including when the vehicle was not presenting a hazard or a threat to public safety; keeping the vehicle [even though] someone was available to pay the impound fee to date, usually for the 30 day period specified by § 14602.6; seizing and impounding vehicles even though the driver has previously been licensed, whether in California or a foreign jurisdiction; failing and refusing to [provide] a hearing on the justification for impounding the vehicle for 30 days; failing and refusing to provide notice of the reason for impounding the vehicle for 30 days; and, on information and belief, charging an above-cost administrative fee.

(Docket No. 1, at p. 4.)  These allegations, in contrast those offered by the plaintiffs in *A.E.*, specify the content of the policies, customs, or practices the execution of which gave rise to the constitutional injuries that Plaintiffs claim.  *See Monell*, 436 U.S. at 694.  The allegations

are sufficient to "give fair notice and to enable the opposing party to defend itself effectively," particularly since information relating to the policies, customs, and practices of County Defendants in enforcing §14602.6 and related statutory sections is likely to be easily available to County Defendants.  *Starr*, 652 F.3d at 1216.  As to *Starr*'s second prong – whether the allegations "plausibly suggest entitlement to relief" – it is inherently plausible that Plaintiffs' constitutional claims – which are based in Defendants' alleged misconstruction of and failure to comply with California statutory law – arose as a result of the County Defendants' customs, policies, or practices.  *Id*.  To the extent that Plaintiffs' allegations relating to each individual Constitutional claim satisfy Rule 8(a), plaintiffs therefore have pled facts sufficient to state a claim that County Defendants are liable under *Monell*.

**2.     Claims based on County Defendants' enforcement of state law**

County Defendants argue that the Eleventh Amendment bars Plaintiffs' claims for damages against the County of Sonoma, the Sonoma County Sheriff's Department ("SCSD"), and Sheriff Steve Freitas in his official capacity.  Because an official-capacity suit against a state official is really a suit against the official's office, it "is no different from a suit against the State itself."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  For this reason, state officers acting in their official capacities are entitled to sovereign immunity from suits for damages under the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839 (9th Cir. 1997).  Sovereign immunity generally does not extend to suits against local government entities because, as in the case of suits for injunctive relief and personal-capacity suits against state officials, "relief is not sought from the state treasury."  *Alden v. Maine*, 527 U.S. 706, 756-57 (1999).  Unless they are considered part of the state for sovereign immunity purposes, local government entities, and officials with "final policymaking authority for the local governmental actor," may therefore be held liable under § 1983 for constitutional violations carried out pursuant to the locality's policies and customs.  *McMillan v. Monroe County*, 520 U.S. 781, 784-85 (1997); *Monell,* 436 U.S. at 690 n. 54 (1978).  It follows that neither the

United States District Court

For the Northern District of California

1    County nor the SCSD enjoys blanket immunity from suit under the doctrine of state

2    sovereign immunity.  *See Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001)

3    (holding that California sheriff's departments may be separately sued under § 1983).[6]

4         The more difficult question is whether Sheriff Freitas should be considered part of the

5    state for sovereign immunity purposes – Defendants contend that he should, and Plaintiffs

6    that he should not.  Plaintiffs' allegations against Sheriff Freitas, broadly writ, relate to the

7    setting of policy and procedures governing the county's investigation of vehicle code

8    violations and enforcement of the vehicle code.  In *Brewster v. Shasta County*, the Ninth

9    Circuit held that California sheriffs act on behalf of the county, not the state, when they

10   investigate crimes, and are therefore not immune from suit under the doctrine of state

11   sovereign immunity.  275 F.3d 805 (9th Cir. 2001), *cert. denied Shasta County v. Brewster*,

12   537 U.S. 814 (2002).  Subsequently, in *Venegas v. County of Los Angeles*, the California

13   Supreme Court, expressly disagreeing with the Ninth Circuit's analysis and holding in

14   *Brewster*, held that "California sheriffs act as state officers while performing state law

15   enforcement duties such as investigating possible criminal activity."  32 Cal. 4th 820, 830 &

16   839 (2004).

17        Since *Venegas*, a division has arisen between district courts within the Circuit about

18   which rule to apply.  Many district courts have continued to apply the Ninth Circuit rule,

19   holding that sheriffs performing law enforcement functions are county officers.  *See*, *eg*.,

20   *Galati v. County of San Mateo*, No. C07-4035, 2008 WL 1886033, at *6 (N.D. Cal. Apr. 25,

21   2008); *Garcia v. County of Merced*, 637 F. Supp. 2d 731, 759-60 (E.D. Cal. 2008); *Brown v.

22   County of Kern*, No. 06-CV-121, 2008 WL 544565, at *11-12 (E.D. Cal. Feb. 26, 2008);

23   *Fontana v. Alpine County*, 750 F. Supp. 2d 1148, 1153 (E.D. Cal. 2009); *Shoval v. Sobzak*,

24   No. 09-CV-1348, 2009 WL 2780155, at *2 (S.D. Cal. Aug. 31, 2009); *Warner v. County of

25   San Diego*, No. 10-cv-1057, 2011 WL 662993, at *4 n. 2 (S.D. Cal. Feb. 14, 2011).  Others,

26   _____

27        [6] Likewise, sheriffs' deputies are not immune from suit under the doctrine of state
     sovereign immunity.  *See Venegas*, 32 Cal. 4th at 839 ("the parties have correctly assumed
28   that the sheriff's deputies would not be shielded by the sheriff's own state agent immunity,
     and are 'persons' who may be held liable for damages under section 1983.")

however, have applied *Venegas* and held that sheriffs performing law enforcement functions are officers of the state and therefore immune from suit. *See, e.g., Walker v. County of Santa Clara*, No. 04-2211, 2005 WL 2437037, at *4 (N.D. Cal. Sept. 30, 2005); *Comm. for Immigrant Rights of Sonoma County v. Sonoma County*, No. C08-4220, 2010 WL 2465030, at *3 (N.D. Cal. June 11, 2010); *Johnston v. County of Sonoma*, No. C10-3592, 2011 WL 855934, at *3 (N.D. Cal. March 9, 2011). The courts that have continued to apply the Ninth Circuit rule have reasoned that municipal liability under § 1983 is a question of federal law, and that they therefore remain bound by *Brewster*. *See, e.g., Fontana*, 750 F. Supp. 2d at 1153 (following *Brewster* because "the Ninth Circuit does not have to follow the determinations of the California courts in § 1983 lawsuits"); *Galati*, 2008 WL 1886033, at *6 (holding that "on this issue of federal law, the Court is bound by the decision of the Ninth Circuit in *Brewster*"). Those courts that have adopted the California Supreme Court's rule have concluded that the *Venegas* decision is correct, and by implication, that the Ninth Circuit got it wrong in *Brewster*. *See, e.g., Comm. for Immigrant Rights*, 2010 WL 2465030, at *3 (holding that *Venegas* "represents the correct statement of the function of California sheriffs"); *Walker*, 2005 WL 2437037, at *4 ("The California Supreme Court's decision comports with this court's understanding of the function of California sheriffs.")

The determination whether an official acts on behalf of a state or a county is "dependant on the definition of the official's functions under relevant state law." *McMillan*, 520 U.S. at 786. This does not mean, however, that federal courts are bound by state court interpretations of state law in this context. In determining whether a local officer or entity is performing a state function, a federal court must conduct its own independent analysis of state law. *Id.*; *see also Streit*, 236 F.3d at 563.

In *Brewster*, the Ninth Circuit conducted an analysis of California state law and concluded that California sheriffs act on behalf of the county, not the state, when performing law enforcement functions. The court based this conclusion on the following factors: money judgments against sheriffs are satisfied out of county, not state, funds; "the California Constitution clearly identifies the sheriff as a county officer"; "California sheriffs are elected

11

United States District Court

For the Northern District of California

1  county officers"; "California sheriffs are only obligated to attend courts within their

2  respective counties"; impeachment proceedings against a sheriff are initiated by a county

3  grand jury; county boards of supervisors exercise authority over the sheriff; and the funding

4  for California sheriffs' departments, including funding for the enforcement of state criminal

5  laws, comes from the county, not the state.  275 F.3d at 807-12.  The dissenters in *Venegas*

6  also concluded, based on the same provisions, that sheriffs act on behalf of counties, not the

7  state, when they enforce state law.  32 Cal. 4th at 851-62 (Kennard, J. and Werdegar, J.,

8  dissenting in separate opinions).

9        *Venegas* does not provide a basis upon which this Court may reach a conclusion that

10  is contrary to the Ninth Circuit's holding in *Brewster*.  There is no indication that the Ninth

11  Circuit's opinion in *Brewster* turned on California decisional law; in fact, the *Brewster* court

12  considered and rejected the reasoning of the California cases upon which the majority in

13  *Venegas* based its analysis.  275 F.3d at 809, 811; *see also Venegas*, 32 Cal. 4th at 830-35.  A

14  published decision of a Ninth Circuit panel must be followed by panels and district courts

15  within the Circuit "unless and until overruled by a body competent to do so."  *Gonzalez v.*

16  *Arizona*, 677 F.3d 383, 390 n. 4 (9th Cir. 2012) (en banc); *see also Streit*, 236 F.3d at 563.

17  The Court therefore denies the motion to dismiss the official-capacity claims against Sheriff

18  Freitas.

19        **3.        Claims against Sheriff Freitas in his personal capacity**

20        County Defendants move to dismiss Plaintiffs' personal-capacity claims against

21  Sheriff Freitas on the ground that their allegations against him are conclusory.  A supervisor

22  can be held liable in his personal capacity under § 1983 "for his own culpable action or

23  inaction in the training, supervision, or control of his subordinates; for his acquiescence in

24  the constitutional deprivation . . . ; or for conduct that showed a reckless or callous

25  indifference to the rights of others."  *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th

26  Cir. 1998) (internal quotation marks and citation omitted).  However, because there is no

27  *respondeat superior* liability under § 1983, "a plaintiff must plead that each government-

28

United States District Court

For the Northern District of California

1  official defendant, through the official's own individual actions, has violated the

2  Constitution." *Iqbal*, 556 U.S. at 675.

3      In the present case, Plaintiffs allege only that Freitas is "the Sheriff of Sonoma

4  County, and the SCSD  policymaker" and that he "is responsible for enforcing SCSD policies

5  on the interpretation and/or application of Cal. Veh. Code 14602.6" and "has ratified or

6  approved of the unconstitutional acts complained of herein."  (Docket No. 1, at p. 3.)

7  Plaintiffs fail to allege the specific policies interpreting §14602.6 for which Freitas is

8  responsible.  *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (holding that

9  allegation of a specific policy for which a defendant is responsible is necessary to survive a

10  12(b)(6) motion).  Plaintiffs' allegation that Freitas ratified or approved the unconstitutional

11  acts alleged in the complaint is likewise conclusory; plaintiffs have not alleged any facts

12  showing that Freitas was aware of the impoundment of Mateos-Sandoval's truck and his

13  attempts to reclaim it, much less that he personally approved of the actions of his

14  subordinates.  *See id*. (holding that "[e]ven under a 'deliberate indifference' theory of

15  individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the

16  defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his

17  subordinates").  In short, Plaintiffs' conclusory allegations related to Freitas are insufficient

18  to state a claim for individual liability under 42 U.S.C. § 1983.  *See id*.  The Court will

19  therefore grant dismissal of Plaintiffs' personal-capacity claims against Freitas.[7]

20      **4.      Claims by Avendando Ruiz against City Defendants**

21      City Defendants argue that some or all of Avendando Ruiz's claims against them are

22  barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[8]  In *Heck*, the Court held that a claim

23  brought in a civil suit must be dismissed where a judgment in favor of the plaintiff on that

24

25      [7]  County Defendants also argue that Freitas is entitled to qualified immunity.  Since
    the Court dismisses Plaintiffs' personal-capacity claims against Freitas based on the

26  conclusory nature of their allegations against him, this alternative argument need not be
    addressed now.

27

28      [8]  It is unclear from City Defendants' papers which of Avendando Ruiz's claims they
    believe are barred by *Heck*.  At oral argument, they asserted that *Heck* barred all of his claims
    against them.

claim would "necessarily imply the invalidity of his conviction or sentence," if that conviction or sentence had not already been invalidated. *Id*. at 487.  City Defendants' argument appears to be that a judgment in favor of Avendando Ruiz would necessarily imply the invalidity of this conviction under § 12500(a) for driving without a valid California driver's license, since the California Vehicle Code authorizes the impoundment of vehicles driven in violation of § 12500(a) and sets out the procedures for challenging an impoundment.[9]  This argument makes no sense.  Plaintiffs' claims challenge the constitutionality of City Defendants' impoundment of Avendando Ruiz's truck, the procedures they provided to him for contesting the impoundment, and the fee he was required to pay to retrieve his truck.  That state statutory law authorizes a procedure does not, in and of itself, render the procedure constitutional.  *See United States v. Cervantes*, __F.3d__, 2012 WL 5951618, at *6 (9th Cir. Nov. 28, 2012) (observing that "[t]he fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment" under federal constitutional law); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 668 n. 5 (1974) ("[T]here cannot exist under the American flag any governmental authority untrammeled by the requirements of due process") (internal quotation marks and citation omitted).  Therefore, Avendando Ruiz's § 12500(a) conviction would not be undermined by a ruling in Plaintiffs' favor on any of their claims.  The *Heck* bar does not apply.

**5.  Requests for declaratory and injunctive relief**

Plaintiffs allege that § 14602.6 is unconstitutional on its face, and they request declaratory relief and an injunction preventing its enforcement.  (Docket No. 1, at p. 17.)

---

[9]  City Defendants do not specify which section of the California Vehicle Code authorized the impoundment.  The impoundment of a vehicle is authorized (but not required) by § 22651(p) if, among many other things, its driver is issued a notice to appear for violating § 12500.  *Posey v. California*, 180 Cal. App. 3d 836, 850 (1986) (holding that removal of a vehicle under § 22561 is "discretionary in nature").  To pass constitutional muster, impoundment of a vehicle pursuant to § 22651(p) must serve some community caretaking function.  *United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008); *People v. Williams*, 145 Cal. App. 4th 756 (2006).  In contrast to § 14602.6(a)(1), § 22651(p) does not specify any period of impoundment; rather, it provides for the release of the vehicle to its owner or an agent of the owner upon presentation of a valid driver's license.  Cal. Veh. Code § 22651(p).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

County Defendants, citing *Los Angeles v. Lyons*, 461 U.S. 95, 105, argue that Plaintiffs do not have standing to seek prospective relief.  (Docket No. 20, at p. 9-10.)  Under *Lyons*, plaintiffs seeking prospective relief must demonstrate a realistic likelihood that there will be a repetition of the alleged past violation of constitutional rights.  *Id*. at 109.  In determining whether such a realistic likelihood exists, courts must assume that plaintiffs "'will conduct their activities within the law so as to avoid prosecution and conviction as well as exposure to the challenged course of conduct. . . .'"  *Id*. at 102 (*quoting O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).

County Defendants point out that Plaintiffs' standing to pursue their requests for prospective relief must be based on an allegation that § 14602.6 will be applied to them in the future.  By its terms, § 14602.6 applies only to individuals who are operating their vehicles in violation of California law.  Plaintiffs have not alleged any facts suggesting that they will continue to operate their trucks illegally, and the court must assume that they will conform their future conduct to the law.  *Id*.  Therefore, Plaintiffs have not adequately pled the actual controversy that is required for standing to pursue their claims for prospective relief.  *See id.* at 104; *see also Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (holding that plaintiff did not satisfy the case-or-controversy requirement for standing when threat of future harm was contingent on "violating the law, getting caught, and being convicted").  The Court will dismiss Plaintiffs' claims for declaratory and injunctive relief.

### 6.      State-law claims for damages

County Defendants move to dismiss Plaintiffs' state-law claims for damages on the ground that they have failed to adequately allege compliance with the Government Tort Claims Act, Cal. Gov't. Code § 810, *et. seq*.  The Act provides, in pertinent part, that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . ."  Cal. Govt. Code § 945.4.  Plaintiffs' state-law claims, which are brought under California Civil Code § 52.1, are subject to this requirement.  *Gatto v. County of*

*Sonoma*, 98 Cal. App. 4th 744, 763 (2002).  To state a claim against a public entity or a public employee acting within the scope of employment, plaintiffs must allege compliance with the Act or that such compliance should be excused.  *California v. Superior Ct. (Bodde)*, 32 Cal. 4th 1234, 1239 (2004); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiffs do not oppose dismissal of their state-law claims for failure to properly allege compliance with the Act, so long as dismissal is with leave to amend.  *See Karim-Panahi*, 839 F.2d at 627 (holding that district court erred in failing to instruct plaintiff about the necessity of alleging compliance with the exhaustion requirements).  Accordingly, the Court will dismiss Plaintiffs' state-law claims.

### 7.    Claims by Avendando Ruiz against County Defendants and by Mateos-Sandoval against City Defendants

County Defendants argue that Avendando Ruiz has failed to state a claim against them because he does not allege that he suffered any harm resulting from actions taken by them, as opposed to City Defendants.  Similarly, the complaint contains no allegation from which a reasonable inference might be drawn that City Defendants' conduct resulted in harm to Mateos-Sandoval.  Avendando Ruiz's claims against County Defendants and Mateos-Sandoval's claims against City Defendants are therefore dismissed.  *See Hunt v. County of Orange*, 672 F.3d 606, 617 (9th Cir. 2012) (a court may *sua sponte* dismiss a claim under Rule 12(b)(6) "when it is clear that the plaintiff has not stated a claim upon which relief may be granted").

### B.    Arguments for dismissal of specific claims

Having addressed all of Defendants' arguments for dismissal that apply to multiple claims, the Court now turns to the specific claims set out in the complaint.  Plaintiffs' complaint encompasses five separate counts, each count alleged against all defendants.  These are: (1) unlawful seizure and impoundment of Plaintiffs' vehicles in violation of the Fourth Amendment; (2) uncompensated taking of Plaintiffs' vehicles in violation of the Fifth Amendment; (3) deprivation of due process with regard to the storage hearing; (4) deprivation of due process by seizing the vehicles as punishment for a criminal violation; and

(5) deprivation of due process by imposing a fee in excess of the administrative costs associated with the seizure and impoundment.  County Defendants urge the Court to dismiss each count for failure to state a claim.  City Defendants request dismissal of all the claims, but do not argue any basis for dismissal of counts one, four, and five beyond their *Heck* argument, which is addressed above.

### 1. Unlawful seizure and impoundment of Plaintiffs' trucks

In Count One of the complaint, Plaintiffs claim that the seizure of their trucks violated the Fourth Amendment because, at the time of impoundment, neither truck was impeding traffic, threatening public safety, or in a location where it would be susceptible to vandalism.  Mateos-Sandoval additionally alleges that a licensed California driver was present who could have driven his truck away.

The impoundment of a vehicle is a seizure under the Fourth Amendment, and therefore must be reasonable.  *See Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005); *Soldal v. Cook County*, 506 U.S. 56, 61(1992).  Warrantless seizures are "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions."  *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotation marks and citation omitted).  In their motion to dismiss, County Defendants argue that two exceptions to the warrant requirement apply.  They contend that the impoundment of Mateos-Sandoval's truck constituted a valid administrative penalty, and that it comported with the community caretaking doctrine.

### a. Impoundment as administrative penalty

County Defendants argue that their thirty-day impoundment of Mateos-Sandoval's truck under § 14602.6(a)(1) constituted a valid administrative penalty, and as such, was reasonable under the Fourth Amendment.  Plaintiffs argue that § 14602.6(a)(1) did not authorize the 30-day impoundment of Mateos-Sandoval's truck, and that to be reasonable, the impoundment had to comport with the community caretaking doctrine, which they argue, it did not.

Section 14602.6(a)(1) applies to three categories of drivers: those whose driving privilege has been suspended or revoked, those who have been convicted of driving under the influence and who are driving a vehicle that is not equipped with a required ignition interlock device, and those who are "driving a vehicle without ever having been issued a driver's license."  At issue in the present case is whether the third category of drivers encompasses individuals who have been issued a driver's license, but by a foreign jurisdiction.  Plaintiffs argue that it does not, and that County Defendants therefore cannot invoke § 14602.6(a)(1) to justify the impoundment of Mateos-Sandoval's truck.

In interpreting California statutes, federal courts apply California rules of statutory construction. *Turnacliff v. Westly*, 546 F.3d 1113, 1117 (9th Cir. 2008).  Under California law, "the ultimate task" of statutory construction is "to ascertain the Legislature's intent." *People v. Massie*, 19 Cal. 4th. 550 (1998).  "To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent."  *Hsu v. Abbara*, 9 Cal.4th 863, 871 (1995).  California Courts give statutory language "its usual, ordinary import," construing statutory provisions in context and keeping in mind the statute's purpose.  *Dyna-Med, Inc. v. Fair Employment & Housing Comm'n.*, 43 Cal.3d 1379, 1387 (1987).  To the extent possible, "statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other."  *Id.*  If a statute's plain language is unambiguous, that language controls.  *Kavanaugh v. West Sonoma County Union High School Dist.*, 29 Cal. 4th 911, 919 (2003).

Viewed in its statutory context, the plain language of the provision at issue here is unambiguous.  "Driver's license" is defined in § 310 of the California Vehicle Code as "a valid license to drive . . . under this code or by a foreign jurisdiction."  Substituting this definition for the term "driver's license" in § 14602.6(a)(1), the section applies to individuals who are "driving a vehicle without *ever* having been issued [a valid license to drive . . . under the California Vehicle Code *or by a foreign jurisdiction*]."  (emphasis added.)  In other words, § 14602.6 applies, among others, to drivers who have never been issued a driver's

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  license in any jurisdiction.  It does not apply to drivers with expired licenses or licenses from

2  jurisdictions outside of California.

3        That the legislature's intent is embodied in the plain language of § 14602.6(a)(1) is

4  confirmed by the use, throughout the Vehicle Code, of the phrase "unlicensed driver" to

5  describe drivers who are not in possession of valid California driver's licenses, in violation of

6  § 12500.  *See*, *e.g.*, Cal. Veh. Code §§ 40000.11; 2814.2(c); 14607.8.  The legislature's

7  choice to use the phrase "without ever having been issued a driver's license" rather than

8  "unlicensed driver" in § 14602.6(a)(1) evinces its intention that the provision apply to a

9  subset of unlicensed drivers – those who have never been issued a license in any jurisdiction.

10       This intention is confirmed by an examination of the statutory language surrounding

11  the provision, which "demonstrates a legislative effort to make a distinction designed to

12  reduce accidents by keeping the most dangerous drivers off the road." *Alviso v. Sonoma*

13  *County Sheriff's Dept.*, 186 Cal. App. 4th 198, 207 (2010).  Driving by individuals whose

14  licenses have been suspended or revoked, or who have been convicted of driving under the

15  influence and do not have a required ignition interlock device, poses an obvious public safety

16  hazard, as does unlawful driving by individuals who have never been licensed to drive.

17  These same public safety concerns are not implicated when an individual with an expired or

18  foreign license takes the wheel.

19       The legislative history of § 14602.6 confirms that the legislature intended the

20  provision to keep dangerous drivers off the road.  Section 14602.6 was added to the

21  California Vehicle Code by chapter 1221, § 13 of the Statutes of 1994 ("SB 1758").[10]

22  According to the Senate Committee on the Judiciary, the purpose of section 14602.6 was to

23  ───────────────

24       [10]  SB 1758 implemented several recommendations made in a 1990 Department of
     Motor Vehicles study, the aim of which was to identify and evaluate mechanisms for
25  deterring driving by individuals whose licenses had been suspended or revoked, particularly
     as a result of convictions for driving under the influence.  *See* California DMV,
26  Development, Implementation, and Evaluation of a Pilot Project to Better Control
     Disqualified Drivers (December 1990); *see also* CHP, Enrolled Bill Report, SB 1758, at p. 3
27  (as amended August 29, 1994).  The DMV study suggested increased use of impoundment as
     a means to "remove suspension violators from the road and deter would-be violators from
28  driving"; it made no mention of individuals driving with expired or foreign licenses.  *Id*. at
     106.

United States District Court

For the Northern District of California

1   "make changes in the vehicle code to deter people from driving on a suspended license or

2   under the influence."  Sen. Comm. on Judiciary, Analysis of Sen. Bill no. 1758 (1993-94

3   Reg. Sess.), as amended Apr. 14, 1994, at p. 5.  This description reflects the legislature's

4   intention that the provision apply to drivers who posed a particular danger to the community,

5   a danger not posed by drivers with expired licenses or licenses issued by foreign

6   jurisdictions.  *See also* Bill Analysis, SB 1758 (as amended June 21, 1994), Assembly

7   Comm. on Transp., at p. 1; Bill Analysis, SB 1758 (as amended April 14, 1994), David

8   Roberti, Chair, Senate Comm. on Judiciary, at p. 3.

9        In the same section of SB 1758 that contained § 14602.6, the legislature enacted §

10  22651(p), which permits an officer to "remove" a vehicle "when the peace officer issues the

11  driver of the vehicle a notice to appear for a violation of § 12500 (driving without a valid

12  California Driver's license)" among other offenses, but, in contrast to § 14602.6, permits the

13  release of the vehicle to a licensed driver at any time.  1994 Stat., ch. 1221 1221, § 13.  The

14  enactment of this provision in the same section of the same bill as § 14602.6 demonstrates

15  that, had the legislature intended § 14602.6 to be applicable to all unlicensed drivers, it would

16  have made specific reference to § 12500, as it did in § 22651(p).  That the legislature chose

17  instead to use the phrase "without ever having been issued a driver's license" in § 14602.6

18  indicates that it intended § 22651(p), and not § 14602.6, to govern the removal of vehicles

19  driven by individuals with expired licenses and licenses issued by jurisdictions outside of

20  California.

21       There is an additional reason that the impoundment of Mateos-Sandoval's truck was

22  not authorized by § 14602.6(a)(1).  As the Office of the Attorney General recently observed,

23  § 14602.6(a)(1) authorizes impoundment only incident to the arrest of the vehicle's driver or

24  if the vehicle has been involved in a traffic collision.  *See* 2012 AG Op., at 5; *see also*

25  *Cervantes*, __ F.3d at *6 (observing that § 14602.6 authorizes impoundment only incident to

26  arrest).  Plaintiffs allege that Mateos-Sandoval was not arrested, and California law prohibits

27  the arrest of an individual solely for being an unlicensed driver.  Cal. Veh. Code §

28  12801.5(e).  If an officer does not arrest a vehicle's driver, "a section 14602.6(a)(3) 30-day

1   hold is plainly inapplicable and unavailable," unless the vehicle has been involved in a

2   collision.  *See* 2012 AG Op., at 5.

3       Because Mateos-Sandoval's vehicle was not in a collision and he was not arrested,

4   and because he had a Mexican driver's license, the impoundment of his truck was not

5   authorized by § 14602.6(a)(1).  County Defendants therefore cannot justify the thirty-day

6   impoundment of his truck as an administrative penalty.  Rather, the impoundment was lawful

7   only if it was justified by community caretaking concerns.[11]

8              **b.    Impoundment under the community caretaking doctrine**

9       County Defendants argue that Plaintiffs have failed to state a claim against them

10  because the impoundment of Mateos-Sandoval's truck was permissible under the community

11  caretaking doctrine.  In making this argument, County Defendants appear to assume that if

12  the impoundment of Mateos-Sandoval's vehicle was carried out in accordance with §

13  14602.6, they would not need to show that the impoundment otherwise comported with the

14  Fourth Amendment.  However, as the Ninth Circuit has observed, "the decision to impound

15  pursuant to the authority of a city ordinance or state statute does not, in and of itself,

16  determine the reasonableness of the seizure under the Fourth Amendment."  *Miranda*, 429 F.

17  3d at 864.[12]

18      The community caretaking doctrine "allows the police to impound where necessary to

19  ensure that the location or operation of vehicles does not jeopardize the public safety."  *Id.* at

20  860.  Police may impound a vehicle under the community caretaking doctrine if the vehicle

_____

22      [11]  The initial seizure, as opposed to the thirty-day impoundment, of Mateos-
Sandoval's vehicle was authorized, if at all, by § 22651(p).  As described above, § 22651(p)
23  permits officers the discretion to store vehicles driven by unlicensed drivers.  The discretion
afforded to officers under § 22651(p) must, however, be exercised in accordance with the
24  community caretaking doctrine.  *See Caseres*, 533 F.3d at 1074-75 (9th Cir. 2008); *People v.
Benites*, 9 Cal. App. 4th 309, 326 (1992).

26      [12]  This would be true even if § 14602.6(a)(1) applied to Mateos-Sandoval.  The
authority to impound a vehicle under § 14602.6 is discretionary.  *Cal. Hwy. Patrol v.
26  Superior Court*, 162 Cal. App. 4th 1144, 1148 (2008) ("If an officer decides not to impound
a car under the discretionary authority provided by section 14602.6(a)(1), it is not 'so
27  impounded' and therefore the 30-day provision is inapplicable.").  The discretion to order
the seizure of a vehicle under state law is confined by the requirements of the Fourth
28  Amendment.  *See United States v. Caseres*, 533 F.3d 1064, 1074-75 (9th Cir. 2008).

*United States District Court*
*For the Northern District of California*

presents a traffic hazard or public safety concern and the driver cannot lawfully operate the vehicle in order to move it to a safe location. *Id*. at 865. In *Miranda*, the Ninth Circuit held that the impoundment of a vehicle from its owners' driveway after a police officer had observed a licensed driver teaching his unlicensed wife how to drive was not justified by the community caretaking doctrine. *Id*. The Court reasoned that, even when the driver of a vehicle is unlicensed, "[a]n officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." *Id*. at 866. Rather, "the decision to impound a vehicle after the driver has violated a vehicle regulation must consider the location of the vehicle, and whether the vehicle was actually 'impeding traffic or threatening public safety and convenience.'" *Id.* at 865 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)).

Similarly, in *United States v. Caseres*, the court held that there was no community caretaking rationale for the impoundment of a vehicle that was legally parked on a residential street two blocks from the driver's home and was not posing a hazard or impediment to other traffic, even though the vehicle's driver had a suspended license. 533 F.3d at 1075. The court reasoned that the rationale of impounding a vehicle for the purpose of deterring unlawful driving is inconsistent with the community caretaking function. *Id*.

Applying *Miranda* and *Caseres*, the Ninth Circuit recently held in *Cervantes* that the community caretaking exception did not justify the impoundment of a vehicle that had been "appropriately pulled to the curb" when stopped in a residential neighborhood that was not near the driver's home. __F.3d__, at *6 (9th Cir. Nov. 28, 2012). The court rejected the Government's attempt to justify the impoundment by citing to § 14602.6(a)(1) and the local police department's impoundment policy, noting that it was not clear that the officers complied with § 14602.6(a)(1), because at the time the vehicle was impounded, its driver had not yet been placed under arrest. *Id*. The court held that, even if the officers had complied with § 14602.6(a)(1), compliance with state law and local policy does not alone justify impoundment under the community caretaking doctrine. *Id*.

County Defendants argue that the impoundment of Mateos-Sandoval's vehicle was justified under the community caretaking doctrine because "he does not allege that he could have left his vehicle legally parked where he pulled over during the traffic stop."[13] (Docket No. 20 at 15-16.)  However, the complaint states that Mateos-Sandoval's vehicle was "stopped at the Santa Rosa curb in a safe and legal location, not blocking traffic, directly in front of a Redwood Credit Union car lot."  (Docket No. 1, ¶ 15.)  It is not too great a leap to infer from this allegation that Mateos-Sandoval's truck was legally parked.  Moreover, County Defendants' assumption that Mateos-Sandoval would have been required to leave his truck at the site of the stop is unfounded: his friend Ortiz, who had a valid California driver's license, was present and available to drive his truck away.  County Defendants have not proffered, and the Court cannot discern, a community caretaking function that would be served by the impoundment of a legally parked vehicle from a public street, when a licensed driver is available to drive the vehicle away.

In sum, the impoundment of Mateos-Sandoval's vehicle cannot be justified under the community caretaking doctrine based on the facts alleged in the complaint.  County Defendants' motion to dismiss Mateos-Sandoval's unlawful seizure claim is therefore denied.

Plaintiffs also argue that even if the initial seizure of their vehicles were reasonable, the decision to retain their vehicles for thirty days, when they were prepared to pay the fine and had a licensed driver available to drive the car away from the lot, was not.  The Supreme Court has held that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States*

---

[13] County Defendants also argue that the impoundment was permissible under the community caretaking doctrine because Mateos-Sandoval "left his work tools in the back of his vehicle, which was parked in a public location."  Mateos-Sandoval's tools are nowhere mentioned in the complaint, and so cannot form a basis for granting a motion to dismiss. *See supra* n. 3.  Moreover, there is no indication that Mateos-Sandoval's truck would have remained parked in a public location had County Defendants not impounded it: Mateos-Sandoval was not arrested, and so could have stayed with his tools, and Mateos-Sandoval's friend, a licensed California driver, was present and could have driven his vehicle away.  County Defendants' argument about the need to protect Mateos-Sandoval's tools is blatantly pretextual.

United States District Court
For the Northern District of California

*v. Jacobsen*, 466 U.S. 124-25 (1984).  The Ninth Circuit recently applied this rule in a case involving the City of Los Angeles's confiscation and subsequent destruction of the personal possessions of homeless people that were temporarily left on city sidewalks.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012).  The court held that "even if the seizure of the property would have been deemed reasonable had the City held it for the return to its owner instead of immediately destroying it, the City's destruction of the property rendered the seizure unreasonable."  *Id.*

Applying this rule in the context of this case, the discretion to impound a vehicle for thirty days under § 14602.6 must be exercised within the limits imposed by the Fourth Amendment's reasonableness requirement.  *See Cal. Hwy. Patrol*, 162 Cal. App. 4th at 1151-52; *see also* 2012 AG op. at 3.  Since the Court has held that, taking the facts in the light most favorable to Plaintiffs, they have stated a claim against County Defendants based on the initial seizure of Mateos-Sandoval's truck, it need not determine at this juncture whether, if the initial seizure were lawful, Plaintiffs' Fourth Amendment claim could proceed based solely on County Defendants' decision to impound Mateos-Sandoval's vehicle for 30 days.

**2.      Uncompensated taking of Plaintiffs' vehicles.**

In Count Two of their complaint, Plaintiffs allege that the impounds of their respective vehicles constituted uncompensated takings for public use, in violation of the Fifth Amendment's takings clause.   The takings clause applies to two types of government action – the taking of physical possession of property or of an interest in that property for a public use and the regulatory prohibition of a private use.   *See Tahoe-Sierra Pres. Council, Inc., v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321-23 (2002).  The first type of taking occurs through the physical appropriation of property.  The second type – regulatory taking – involves state imposition of a regulation that prohibits or prevents property owners from using their property in a way that diminishes its value.  The impounds at issue in the present case fall into the first category: it is not disputed that Plaintiffs had a property interest in their trucks, and Defendants deprived them of that interest by impounding their trucks. *See Arkansas Game and Fish Comm'n v. United States*, __ S.Ct. __, *3 (2012) ("[I]f

government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking.").

Defendants argue that Plaintiffs are not entitled to just compensation for the takings of their trucks because they were not taken for "public use." The Supreme Court has construed the public use requirement broadly. *See Kelo v. City of New London*, 545 U.S. 469, 483 (2005) (noting that Court's "public use jurisprudence has . . . eschewed rigid formulas and intensive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power"); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 240 (1984) (holding that the scope of the "public use" requirement of the Taking Clause is "coterminous with the scope of the sovereign's police powers").

In *Bennis v. Michigan*, the Court considered whether the state's forfeiture of a woman's interest in a car constituted a "public use." The state trial court ordered the sale of the car pursuant to an indecency statute after her husband had sex with a prostitute in it while it was parked on a Detroit city street. 516 U.S. 442, 453 (1996). Having determined that the sale did not violate the Fourteenth Amendment's due process clause, the Court further held:

> [I]f the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State. The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.

*Bennis*, 516 U.S. at 452. Similarly, in *Tate v. District of Columbia*, the D.C. Circuit held that the impoundment and sale of Plaintiff's vehicle as a result of unpaid traffic fines did not "constitute a taking for public use for which she was entitled to compensation under the Fifth Amendment's Takings Clause." 627 F.3d 904, 909 (D.C. Cir. 2010). The Court reasoned that "if the [government's] impoundment of Tate's vehicle did not deprive her of due process . . . then there was no unlawful taking and no compensation due for the lawful taking that did occur." *Id.*

In the present case, if Plaintiffs can prove their Fourth Amendment claim, then Defendants' interference with their property rights – the impoundment of their trucks – was unjustified. But that does not mean that the taking was "for public use." The takings clause

United States District Court

For the Northern District of California

only "requires compensation in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543 (2005). The "public use" requirement "goes to the legitimacy of the government's taking to begin with; if a taking is not for public use, the government has no right to complete the act of eminent domain." *Lee v. City of Chicago*, 330 F.3d 456, 475 (7th Cir. 2003) (Wood, J., concurring). The unlawful seizure of property therefore does not constitute "public use."

If, on the other hand, Plaintiffs ultimately fail to prove their Fourth Amendment claim, their takings clause claim would also fail because Defendants lawfully acquired their trucks "under the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452. To be clear, as a general matter, the applicability of one constitutional amendment does not preclude a claim under another. *See Soldal*, 506 U.S. at 70. But under the facts as alleged in the present case, Plaintiffs' takings clause claim cannot proceed under any theory of liability. It will therefore be dismissed.

### 3.   Deprivation of Due Process – storage hearing

In Count Three of their complaint, Plaintiffs raise several due process challenges relating to the procedures that were afforded to them for contesting the impoundment of their trucks: (1) Plaintiffs were not provided notice that mitigating circumstances could be considered during the storage hearing; (2) Defendants have a practice of not considering mitigating circumstances; (3) the term "mitigating circumstances" is vague and arbitrary; and (4) the hearing officers are biased because they work for the same agency as the officers who effect the impoundments. County Defendants move to dismiss all four components of this count.

First, County Defendants argue that statutory law and case law provide adequate notice that mitigating circumstances will be considered. The Supreme Court has held that individualized notice "of state-law remedies . . . established by published, generally available state statutes and case law" is not required. *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1995). Section 14602.6(b) provides that the vehicle's owner "shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating

United States District Court

For the Northern District of California

1    circumstances attendant to, the storage, in accordance with Section 22852."   As the

2    California Court of appeal observed in *Samples*, "section 14602.6(b) directs the impounding

3    agency to consider facts or situations that might reduce the culpability of the owner and

4    warrant the early release of an impounded vehicle."   146 Cal. App. 4th 787, 802 (2007); *see*

5    *also Smith*, 97 Cal. App. 4th at 549-50 ("the registered owner's lack of actual knowledge that

6    the driver to whom he loaned his car was not validly licensed constitutes a mitigating

7    circumstance . . . warranting release of the vehicle to the registered owner before the

8    expiration of the 30-day storage period.")   This statutory and case law constitutes

9    constitutionally sufficient notice to Mateos-Sandoval of his right to contest the duration of

10   the impoundment of his truck based on mitigating circumstances.

11        Second, County Defendants argue that Plaintiffs have failed to allege facts suggesting

12   that mitigating circumstances were not considered at Mateos-Sandoval's storage hearing.

13   Plaintiffs allege only that "on February 1, 2011 and February 3, 2011, SCSD re-affirmed that

14   the 30 day impound under Veh. Code § 14602.6 was justified and required notwithstanding

15   that Mr. Sandoval[] had [a] Mexican driver's license."  (Docket No. 1 at ¶ 20.)  This

16   allegation is insufficient to support a claim that County Defendants deprived Mateos-

17   Sandoval of an opportunity to present mitigating circumstances: Plaintiffs do not specify

18   whether Mateos-Sandoval had a storage hearing, and, if so, whether he presented, or

19   attempted to present, any mitigating circumstances for County Defendants' consideration.

20        Third, County Defendants argue that it is well-settled that the term "mitigating

21   circumstances" is not unconstitutionally vague.  The term "mitigating circumstances" is

22   widely used, and examples of mitigating circumstances in the context of impounds

23   under § 14602.6 are set out in the statute and in case law.  *See Samples*, 146 Cal. 4th

24   787 (reversing trial court holding that "mitigating circumstances" in the context of §

25   14602.6(b) was unconstitutionally vague); *Smith v. Santa Rosa Police Dept.*, 97 Cal. App.

26   4th 546 (2002) (owner's lack of knowledge that the license of vehicle's driver was invalid

27   constituted mitigating circumstance).  The term is not unconstitutionally vague.

28

1    Fourth, County Defendants argue that Plaintiffs have insufficiently pled that the

2 hearing officer in Mateos-Sandoval's case was biased.  As discussed above, Plaintiffs have

3 not even pled that Mateos-Sandoval had a hearing to contest the impoundment of his truck.

4 Their allegations are therefore insufficient to support a claim that the hearing officer, if there

5 was one, was biased.

6    For the foregoing reasons, County Defendants' motion to dismiss Count Three of the

7 complaint is granted.

8    **4.    Deprivation of Due Process – impoundment as punishment**

9    In Count Four of their complaint, Plaintiffs allege that Defendants' 30-day

10 impoundment of their trucks violates the due process clause to the extent that the purpose of

11 the impoundment is punishment for driving without a valid license.  Plaintiffs also argue that

12 if the purpose of impoundment is punishment, they are entitled to notice that they were

13 accused of a crime and a hearing at which they were not presumed to be guilty, which they

14 allege that they did not receive.

15    County Defendants argue that, under Ninth Circuit precedent, there is no procedural

16 due process right to a pre-impoundment hearing.  In support of this proposition, County

17 Defendants cite to *Goichman v. Rheuban Motors*, *Inc.*, in which the court held that the

18 requirement that a hearing be provided within 48 hours after the seizure of an illegally parked

19 vehicle satisfied the due process clause.  682 F.2d 1320, 1325 (9th Cir. 1982).  However, the

20 Ninth Circuit subsequently has clarified that whether a pre-impoundment hearing is required

21 may depend on whether the seizure was justified under the community caretaking doctrine.

22 In *Miranda*, the court distinguished *Goichman* as follows:

23    Impoundment of a vehicle left in a public place or a vehicle for which
    there is no licensed driver . . . [is] likely justified by the need to respond
24    immediately to the hazard or public safety threat caused by the location of
    the vehicle[], which would be incompatible with a requirement of notice
25    and a hearing beforehand.  However, the novel question, squarely
    presented in this case, of whether a pre-deprivation hearing is required for
26    an impoundment from the driveway of the owners' home, cannot be
    resolved without more factual development and a more detailed analysis
27    of the competing interests involved.  Because Defendants have not
    provided us with a legitimate caretaking purpose in impounding the car,
28    the question whether a pre-deprivation hearing was required for the
    Mirandas' case cannot be properly determined on the record before us.

United States District Court

For the Northern District of California

1   *Miranda*, 429 F.3d at 867.  The court directed the district court, on remand, to "determine

2   whether any legitimate caretaking purpose offered by Defendants outweighs the affected

3   private interest of the Mirandas in uninterrupted possession of their car and the risk of

4   erroneous deprivation."  *Id*. at 867-68.

5          As discussed above, under the facts alleged in the complaint, the civil impoundment of

6   Mateos-Sandoval's truck was not justified under the community caretaking doctrine and not

7   authorized under § 14602.6(a).  *See id*. at 866.  Under *Miranda*, it is not necessary to

8   consider whether County Defendants' justification of the impoundment as a penalty triggers

9   heightened procedural protections in order to determine that Plaintiffs have stated a claim

10  under the due process clause.  *See id*. at 867-68; *United States v. James Daniel Good Real*

11  *Prop*., 510 U.S. 43, 48 (1993) ("Our precedents establish the general rule that individuals

12  must receive notice and an opportunity to be heard before the Government deprives them of

13  property.")  County Defendants' motion to dismiss plaintiffs' fourth count therefore is

14  denied.

15         **5. Deprivation of Due Process – excessive fee**

16         Plaintiffs' fifth count alleges that Defendants have a "custom, policy, and practice" of

17  imposing a fee on vehicles seized and impounded pursuant to § 14602.6(a) that is "in excess

18  of the administrative costs associated with the seizure and impound."  (Docket No. 1, at p.

19  26.)  They contend that the imposition of this fee violates § 22850.5(a), which permits a state

20  or local government agency to establish procedures for the imposition of "a charge equal to

21  its administrative costs relating to the removal, impound, storage, or release of the vehicles,"

22  and constitutes a constitutional violation.  County Defendants move to dismiss this count

23  because the complaint does not allege that Mateos-Sandoval paid any administrative fee to

24  County Defendants.  They are correct.  Because the complaint provides no factual basis for a

25  claim that County Defendants imposed an excessive fee, the Count Five will be dismissed

26  against them.

27

28

29

**CONCLUSION**

For the reasons given above, City Defendants' Motion to Dismiss is GRANTED as to:

    1.  All state-law claims;

    2.  Claims for prospective relief;

    3.  All claims brought on behalf of Mateos-Sandoval;

    4.  The takings clause claim (Count Two); and

    5.  The claim that the hearing procedures denied Plaintiffs due process (Count Three).

County Defendants' Motion to Dismiss is GRANTED as to:

    1.  All state-law claims;

    2.  Claims for prospective relief;

    3.  All Claims brought on behalf of Avendando Ruiz;

    4.  All personal-capacity claims against Sheriff Freitas;

    5.  The takings clause claim (Count Two);

    6.  The claim that the hearing procedures denied Plaintiffs due process (Count Three); and

    7.  The excessive fee claim (Count Five).

Defendants' motions are otherwise DENIED.

IT IS SO ORDERED.

Dated:   12/06/2012

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

United States District Court

For the Northern District of California

30