UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MATEOS SANDOVAL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, et al.,<br><br>Defendants. | Case No. 11-cv-05817-TEH<br><br>**ORDER GRANTING DEFENDANT FREITAS'S MOTION TO DISMISS** |

This matter comes before the Court on the motion of Defendant Sonoma County Sheriff-Coroner Steve Freitas ("Sheriff Freitas") to dismiss Count Four of the Second Amended Complaint ("SAC") – due process claims against him in his personal capacity for a violation of 42 U.S.C. § 1983 ("Section 1983"). After carefully considering the parties' briefing and supplemental briefing in response to the Court's questions, the Court GRANTS the motion for the reasons discussed below.

**BACKGROUND**

The issue before the Court is whether Count Four of the SAC states a claim for relief against Sheriff Freitas in his personal capacity under Section 1983 for a due process violation based on the impoundment of Plaintiff Rafael Mateos-Sandoval's ("Mateos-Sandoval") vehicle as punishment. The salient facts alleged in the SAC are the following:[1]

---

[1] The Court has elsewhere described the factual allegations and procedural history of this case in more detail and does not repeat them here. *See* Jan. 31, 2013 Order Granting in Part and Denying in Part Motions to Dismiss ("Jan. 31, 2013 Order"), Docket No. 69-1, *Mateos-Sandoval v. Cnty. of Sonoma*, 942 F. Supp. 2d 890 (N.D. Cal. 2013); Jul. 25, 2013 Order Granting in Part and Denying in Part Motions to Dismiss ("Jul. 25, 2013 Order"), Docket No. 104, *Mateos-Sandoval v. Cnty. of Sonoma*, — F.Supp.2d —, No. C11-5817 TEH, 2013 WL 3878181 (N.D. Cal. July 25, 2013).

On January 27, 2011, Mateos-Sandoval was driving his truck when a Sonoma County Sheriff's Department ("SCSD") deputy pulled him over. Mateos-Sandoval stopped his truck at a safe and legal location where his truck was not blocking traffic. The deputy informed him that his truck's trailer hitch was blocking its license plate and asked to see his driver's license. When Mateos-Sandoval responded that he had a driver's license from Mexico, the deputy ordered the impoundment of Mateos-Sandoval's truck under California Vehicle Code section 14602.6 ("VC § 14602.6") and called for a tow truck.[2] While they were still at the scene of the traffic stop waiting for the tow truck, Mateos-Sandoval's friend arrived, told the deputy that she had a California driver's license, and both she and Mateos-Sandoval asked the deputy to permit her to drive the truck away. The deputy denied their request. The tow truck arrived and removed Mateos-Sandoval's truck.

The following day, and again on January 31, 2011, Mateos-Sandoval went to the SCSD office, and requested a hearing. On both occasions, SCSD personnel informed him that he was not eligible for a hearing and refused to schedule one. Thereafter, Mateos-Sandoval received by mail a California Highway Patrol Form 180 ("CHP 180 form") informing him of the availability of a hearing to contest his truck's impoundment. He alleges that the CHP 180 form only informed him of a right to a hearing to contest the

---

[2] VC § 14602.6 provides that:

> Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted pursuant to Section 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person . . . . A vehicle so impounded shall be impounded for 30 days.

Cal. Veh. Code § 14602.6(a)(1).

decision to remove the vehicle from the street but did not provide notice of a hearing to contest the decision to impound the vehicle for 30 days.[3] On February 1, 2011, and February 3, 2011, SCSD informed Mateos-Sandoval in writing that his vehicle would remain impounded under VC § 14602.6, even though he had a Mexican driver's license.[4] As a result of the impoundment, Mateos-Sandoval was denied the use of his truck for over thirty days. Mateos-Sandoval alleges that at all times during that period he was ready and able to pay the storage charges and provide a licensed California driver to drive his truck away from the storage yard.

Mateos-Sandoval alleges that Sheriff Freitas, as Sheriff of Sonoma County, is the SCSD policymaker and, on information and belief, alleges that he is responsible for enforcing SCSD policies on the interpretation and/or application of VC § 14602.6. Mateos-Sandoval further alleges, on information and belief, that Sheriff Freitas ratified or approved of the acts alleged in the SAC and is liable in his personal capacity because (1)

---

[3] Mateos-Sandoval also alleges that the CHP 180 form did not provide notice as to why the vehicle was being impounded. However, he admits in his opposition brief that "the CHP 180 form stated that the storage authority/reason was [VC] § 14602.6." Opp'n at 5:25-26. The Court takes judicial notice of this admission. *See Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) (holding courts "have discretion to consider a statement made in briefs to be a judicial admission . . . binding on . . . the trial court").

In addition, the Court takes judicial notice of the CHP 180 form itself. "Certain written instruments attached to pleadings may be considered part of the pleading. Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (internal citation omitted). The CHP 180 form here is such a document, and confirms that the stated authority for the impoundment was VC § 14602.6. *See* Cnty. Def. Req. for Judicial Notice, Ex. A, Docket No. 21-1, at 3.

[4] VC § 14602.6 provides for storage hearing related to the thirty-day impoundment:

> The registered and legal owner of a vehicle that is removed and seized under subdivision (a) or their agents shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage, in accordance with [VC] Section 22852.

Cal. Veh. Code § 14602.6(b).

3

he knew that law enforcement agencies do not have the authority to punish alleged wrongdoers or impose summary punishment, and that despite this knowledge, he personally approved of the impoundments of vehicles under VC § 14602.6; (2) the SCSD's thirty-day impoundment of his truck violated due process to the extent that the purpose of an impoundment under VC § 14602.6 was punishment for driving in circumstances where officers are made aware that the driver has been issued a driver's license by a foreign jurisdiction; and (3) that if the purpose of an impoundment under VC § 14602.6 were punishment, Mateos-Sandoval should have been entitled to notice that he was accused of a crime and a hearing at which he was not presumed to be guilty.[5]

**LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

---

[5] On March 28, 2011, Mateos–Sandoval appeared in the Superior Court of the County of Sonoma, where he pled guilty to, and was convicted of, violating California Vehicle Code section 12500, which provides that "[a] person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code." Cal. Vehicle Code § 12500(a). Although the SAC does not contain allegations relating to the subsequent conviction, the Court has previously taken judicial notice of Mateos-Sandoval's record of conviction for violating VC § 12500. *See* Jan. 31, 2013 Order, 942 F. Supp. 2d at 896 n.3.

Sheriff Freitas also renews his request to judicially notice a misdemeanor arrest citation issued to Mateos-Sandoval at the scene of the traffic stop, which purportedly notified him in writing that he was being arrested for violating "12500(a) VC – unlicensed driver; 5201(g) VC – obstructed plate" and indicates "*30 day tow*." Reply at 12 n.8. The Court declines to take judicial notice of this document because it is not the type of public record containing adjudicative facts that are not subject to reasonable dispute, Fed. R. Evid. 201(b), and is not properly before the Court on a Rule 12(b)(6) motion. *See Ritchie*, 342 F.3d at 909 (citing with approval *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985) (holding that the existence and content of a police report are not properly the subject of judicial notice)). Moreover, it was neither referred to extensively in the SAC nor does it form the basis of Mateos-Sandoval's due process claim in Count Four of the SAC. *Ritchie*, 342 F.3d at 908.

*Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). "Rule 8 . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.,* 487 F.3d 1246, 1249 (9th Cir. 2007).

**DISCUSSION**

**I.    Plaintiff Ruiz Has No Remaining Claims Against Sheriff Freitas.**

Sheriff Freitas first moves to dismiss Count Four to the extent that it is alleged by Plaintiff Avendando Ruiz and not Mateos-Sandoval. However, the Court previously dismissed all claims by Ruiz against the Sonoma County Defendants, including Sheriff Freitas, because Ruiz alleged only wrongdoing by the Santa Rosa City Defendants, Jan. 31, 2013 Order, 942 F. Supp. 2d at 904-05, and Plaintiffs confirm that the SAC contains no claims by Ruiz against the County of Sonoma or Sheriff Freitas, Opp'n at 1 n.1.

**II.   Sheriff Freitas Is Entitled to Qualified Immunity.**

Sheriff Freitas argues that Mateos-Sandoval fails to state a claim in Count Four because he does not allege sufficient facts to establish a plausible due process claim and, even if he had, Sheriff Freitas is entitled to qualified immunity. As discussed below, the

5

1 Court finds that Sheriff Freitas is entitled to qualified immunity and therefore does not
2 address the sufficiency of the allegations to state a due process claim.

3       In a Section 1983 claim, qualified immunity "protects government officials 'from
4 liability for civil damages insofar as their conduct does not violate clearly established
5 statutory or constitutional rights of which a reasonable person would have known.'"
6 *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800,
7 818 (1982)). It "gives government officials breathing room to make reasonable but
8 mistaken judgments and protects all but the plainly incompetent or those who knowingly
9 violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (citation and internal quotation
10 marks omitted). Thus, qualified immunity "shield[s] an officer from personal liability
11 when an officer reasonably believes that his or her conduct complies with the law."
12 *Pearson*, 555 U.S. at 244.

13       The qualified immunity analysis has two prongs: (1) whether the facts, as alleged,
14 show defendant's conduct violated a constitutional right and (2) whether the right was
15 clearly established. *See id.* at 232. These prongs may be evaluated in either order, *see id.*
16 at 236, and the Court may therefore grant "qualified immunity on the ground that a
17 purported right was not 'clearly established' by prior case law, without resolving the often
18 more difficult question whether the purported right exists at all." *Reichle v. Howards*, 132
19 S. Ct. 2088, 2093 (2012) (citing *Pearson*, 555 U.S. at 227). A right is "clearly established"
20 if it is "sufficiently clear that every reasonable official would have understood that what he
21 is doing violates that right. In other words, existing precedent must have placed the
22 statutory or constitutional question beyond debate." *Id.* at 2093 (citation and quotation
23 marks omitted). While there need not be a "case directly on point," *Ashcroft v. al-Kidd*,
24 131 S. Ct. 2074, 2083 (2011), the plaintiff nonetheless "bears the burden of proving that
25 the rights she claims were 'clearly established' at the time of the alleged violation," *Moran*
26 *v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183,
27 197 (1984)).

28       Although the SAC includes multiple allegations and sub-allegations that appear to

6

support Mateos-Sandoval's due process claim in Count Four, SAC ¶ 82-84, Mateos-Sandoval clarified in his opposition that the clearly established right allegedly violated by Sheriff Freitas was a due process right to have the CHP 180 form state the statutory basis for the arrest that led to the impoundment of his vehicle under VC § 14602.6 or state that the legislative purpose underlying the statute was punishment, Opp'n at 5 (stating that "[t]he issue is not whether previous case law has determined that a pre-impound hearing was required under the specific circumstances of this case, nor that there is no law that states law enforcement cannot impound when someone is presumed to be driving illegally," but rather that the "focus" should be "that his car was impounded for 30 days as punishment, without being provided notice (via the CHP 180 form) that the impound was to punish him for some crime he allegedly committed").

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Courts have consistently found that VC § 14602.6 – along with its attendant notice and hearing provisions[6] – pass constitutional muster and afford adequate due process protections. *See, e.g.*, *Salazar v. City of Maywood*, 414 F. App'x 73, 75 (9th Cir. 2011) (affirming district court's dismissal of Section 1983 challenge to VC § 14602.6 and holding that notice and hearing provisions of VC § 14602.6 satisfy due process)[7]; *Alviso v. Sonoma Cnty. Sheriff's Dep't*, 186 Cal. App. 4th 198, 209-214 (2010) (finding impound scheme provided for by [VC §] 14602.6 and [VC §] 22852 do not violate due process); *Samples v. Brown*, 146 Cal. App. 4th 787, 801 (2007) ("The conduct prohibited by [VC §] 14602.6 is unlicensed driving. This statute also provides unquestionably clear notice that a person who drives without a license may be arrested, that the car driven by an unlicensed driver may be seized by a law enforcement officer, and that a seized vehicle will be

---

[6] *See* Cal. Veh. Code § 14602.6(b).

[7] As an unpublished opinion, *Salazar* may be cited for its persuasive but non-precedential value. Fed. R. App. P. 32.1.

7

impounded for no longer than 30 days."). Mateos-Sandoval has cited no authority, and the Court has been able to find none, where a court found that a government official's use of the CHP 180 form in the course of a vehicle's impoundment pursuant to VC § 14602.6 violates due process.

While a case directly on point is not necessary to find a clearly established right, Mateos-Sandoval must still identify precedent that "placed the statutory or constitutional question beyond debate." *Reichle*, 132 S. Ct. at 2093. As discussed below, he has failed to meet that burden here.

First, Mateos-Sandoval relies on *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005), and *United States v. Cervantes*, 678 F.3d 798, 806 (9th Cir. 2012), for the proposition that compliance with a state statute or police policy is insufficient, standing alone, to justify an impoundment under the community caretaking exception to the Fourth Amendment. However, whether the impoundment of Mateos-Sandoval's vehicle violated the Fourth Amendment has no bearing on whether SCSD's post-seizure reliance on CHP 180 form to inform Mateos-Sandoval of the impoundment pursuant to VC § 14602.6 violates due process. Nothing in these cases would put a reasonable officer in Sheriff Freitas's position on notice that additional due process protections were required beyond complying with VC § 14602.6, along with its notice and hearing procedures, and utilizing the CHP 180 form. Thus, neither of these cases supports Mateos-Sandoval's contention that the right was clearly established at the time of the alleged violation.[8]

Mateos-Sandoval additionally argues that Sheriff Freitas was "on notice that the policies he sanctioned or ratified" failed to satisfy due process by virtue of *Gete v. INS*, 121 F.3d 1285, 1298-99 (9th Cir. 1997). In that case, the Ninth Circuit held that form

---

[8] Moreover, *United States v. Cervantes*, 678 F.3d 798, *opinion amended and superseded*, 703 F.3d 1135 (9th Cir. 2012) was published on May 16, 2012. Thus, even if the case supported Mateos-Sandoval's contention that a due process violation occurred, it would not demonstrate that the right was clearly established at the time of Sheriff Freitas's alleged violation in January and February 2011.

8

1  letters issued for Immigration and Naturalization Services' ("INS's") permanent forfeiture
2  proceedings were insufficient where they stated only that property had been seized and
3  provided copies of the relevant act and INS regulations without identification of the
4  specific statutory provision and a disclosure of the factual basis of the seizure alleged to
5  have been violated. *Id*. at 1290, 1298. Here, by contrast, there is no dispute that the CHP
6  180 form provided Mateos-Sandoval with notice that the basis for the temporary, 30-day
7  impoundment was pursuant to VC § 14602.6. *See*, *supra*, note 3. Indeed, on February 1,
8  2011, and February 3, 2011, SCSD informed Mateos-Sandoval in writing that his vehicle
9  would remain impounded under VC § 14602.6, even though he had a Mexican driver's
10 license. SAC ¶ 21. Thus, unlike in *Gete*, Mateos-Sandoval was given notice of the
11 specific basis for the underlying seizure. *Accord Coaxum v. Washington*, No. C10-1815-
12 MAT, 2012 WL 1034231, at *14 (W.D. Wash. Mar. 26, 2012) (finding *Gete* did not apply
13 to claim because plaintiff was not left guessing as to basis for suspension of childcare
14 license where summary suspension letter provided a factual explanation for the decision
15 and cited the relevant code provisions).

16 Similarly, the other cases Mateos-Sandoval offers do not involve VC § 14602.6 or
17 the CHP 180 form, and in fact, speak generally about due process rights in markedly
18 different contexts. *See Connecticut v. Doehr*, 501 U.S. 1, 5, 17-18 (1991) (holding that
19 Connecticut law authorizing prejudgment attachment of real estate without affording prior
20 notice or the opportunity for a prior hearing to the individual whose property is subject to
21 the attachment, without some showing of exigent circumstances, violates due process); *F.*
22 *J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.*, 244 F.3d 1128, 1137,
23 1139 (9th Cir. 2001) (holding that when a federal district court used its inherent powers to
24 impose a $500,000 sanction payable to the government against a party for attempted
25 bribery in a partnership dissolution proceeding, the sanction became criminal in nature and
26 the court was required to provide heightened due process protections such as would be
27 available in a criminal contempt proceeding); *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir.
28 2003) (holding that punitive, criminal sanction imposed by bankruptcy court was in excess

9

of the inherent *civil* contempt authority vested in it by 11 U.S.C. § 105(a) and was thus improper). The inquiry into whether the right was clearly established at the time "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In the specific context of this case, *Doehr*, *F.J. Hanfshaw Enterprises*, and *In re Dyer* do not show that every reasonable officer would have understood that compliance with VC § 14602.6 and use of the CHP 180 form violates due process. Thus, they do not support Mateos-Sandoval's argument.

      Mateos-Sandoval cites *Smith v. Santa Rosa Police Department*, 97 Cal. App. 4th 546, 554 n.6, 565-66 (2002), for the proposition that the California Court of Appeal has declined to construe VC § 14602.6 as a penal statute or read into it criminal liability. Although his argument is not clear, he appears to contend that *Smith* made it "sufficiently clear that every reasonable official would have understood that" enforcing VC § 14602.6 for the purpose of punishment would violate due process rights. *Reichle*, 132 S. Ct. at 2093. California Courts of Appeal after *Smith*, however, have explicitly recognized in relation to VC § 14602.6 that "the government has a strong interest in keeping unlicensed drivers off the roads, both by temporarily impounding their vehicles and by deterring them from driving on suspended or revoked licenses in the first place." *Alviso,* 186 Cal. App. 4th at 214 (citing *Smith*, 97 Cal. App. 4th at 558); *see also Samples*, 146 Cal. App. 4th at 806 ("the fundamental policy decision effectuated by this statute [is] to punish and prevent unlicensed driving"). Thus, even if enforcement of VC § 14602.6 and attendant use of the CHP 180 form to effectuate the legislative purpose of punishment and prevention of unlicensed driving were found to violate due process, *Alviso* and *Samples* made sufficient pronouncements about the deterrent ends of VC § 14602.6 to "shield an officer from personal liability when" that officer would reasonably believe that "his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. Thus, *Alviso* and *Samples* support the proposition that the due process right asserted by Mateos-Sandoval was not clearly established at the time of the alleged violation.

Mateos-Sandoval attempts to distinguish *Samples* and *Alviso* by asserting that *Samples* "did not address plaintiffs' notice/due process claim" and *Alviso* did not address the "due process problem at issue here, i.e. [VC §] 14602.6 impounds being used as punishment." Opp'n at 7. *Samples* upheld the constitutionality of VC § 14602.6 in the face of a vagueness challenge and *Alviso* upheld VC § 14602.6 against a due process challenge to the impoundment scheme and its notice and hearing provisions. To the extent neither case squarely addressed the due process argument here – that a due process right existed to have the CHP 180 form state the statutory basis for the arrest that led to the impoundment of his vehicle under VC § 14602.6 or state that the legislative purpose underlying the statute was punishment – further reinforces the fact that precedent at the time of the alleged violation had not "placed the statutory or constitutional question beyond debate." *Reichle*, 132 S. Ct. at 2093. Mateos-Sandoval has supplied the Court with no on-point authority that would allow the Court to conclude that the right asserted was clearly established at that time.

Lastly, Mateos-Sandoval cites *Ramirez v. Butte-Silver Bow County* for the proposition that as a high-ranking official, Sheriff Freitas is required to know more than his subordinate officers and his assertion of qualified immunity is judged by a more exacting standard. 298 F.3d 1022, 1028 (9th Cir. 2002) *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004). *Ramirez*, however, still does not address the dispositive question here – i.e. whether the alleged right was clearly established, and thus *Ramirez* is inapposite.

The Court accordingly holds that Mateos-Sandoval has failed to meet his burden of demonstrating the due process right alleged in Count Four was clearly established at the time of the alleged violation in 2011. Mateos-Sandoval has not shown that every reasonable officer in Sheriff Freitas's position would have known that stating the authority for the impoundment as VC §14602.6 on the CHP 180 form would violate Mateos-Sandoval's due process rights or that the CHP 180 form or the impoundment scheme effectuated by VC § 14602.6 was otherwise deficient in the due process it afforded.

11

Sheriff Freitas is therefore entitled to qualified immunity on the personal-capacity Section 1983 claim for a violation of due process as alleged in Count Four of the SAC.[9]

**CONCLUSION**

For the foregoing reasons, the Court DISMISSES Plaintiff Mateos-Sandoval's due process claims in Count Four of the SAC against Sheriff Freitas in his personal capacity because he is entitled to qualified immunity on this claim. Because qualified immunity is an "an immunity from suit rather than a mere defense to liability," *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010) (citation, quotation marks, and emphasis omitted), leave to amend would be futile, and thus the dismissal is WITH PREJUDICE. The Court also confirms that any claims in Count Four by Plaintiff Ruiz against the County of Sonoma or Sheriff Freitas were dismissed by the Court's prior order. *See* Jan. 31, 2013 Order, 942 F. Supp. 2d at 904-05.

**IT IS SO ORDERED.**

Dated:   01/31/14                                  _____
                                                   THELTON E. HENDERSON
                                                   United States District Judge

---

[9] This holding does not mean that no constitutional violation may later be found against the County Defendants or Sheriff Freitas in his official capacity related to Count Four. *See* Jan. 31, 2013 Order, 942 F. Supp. 2d at 913 (holding the civil impoundment of Mateos-Sandoval's truck was not justified under the community caretaking doctrine and not authorized under § 14602.6). These claims, however, are stayed pending appeal.

12