UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAFAEL MATEOS SANDOVAL, et al.,

Plaintiffs,

v.

COUNTY OF SONOMA, et al.,

Defendants.

Case No. 11-cv-05817-TEH

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Now before the Court are Plaintiffs' motions and Defendants' cross-motions for partial summary judgment.  The Court heard oral argument on this matter on October 27, 2014.  After carefully reviewing the arguments of the parties in the papers submitted and at the hearing, the Court now DENIES Plaintiff Sandoval's motion, GRANTS IN PART and DENIES IN PART Plaintiff Ruiz's motion, GRANTS Defendant Freitas's motion, and GRANTS IN PART and DENIES IN PART the Santa Rosa City Defendants' motion, for the reasons set forth below.

**BACKGROUND**

The background of this case is by now familiar to everyone involved.  The following summary gives context to the issues presented by these cross-motions.  The facts recited herein are not disputed by the parties.

Plaintiffs Rafael Mateos-Sandoval ("Sandoval") and Simeon Avendano Ruiz ("Ruiz") challenge the thirty-day impoundment of their vehicles for driving without a license.  Both Plaintiffs had previously been issued driver's licenses in Mexico.  Sandoval Dep., Ex. D to Keck Decl. at 13 (Docket No. 198); Ruiz Dep., Ex. A to Jackson Decl. at 19 (Docket No. 195).  On January 27, 2011, Sandoval's truck was seized by the Sonoma

United States District Court
Northern District of California

County Sheriff's Department and impounded for thirty days under California Vehicle Code section 14602.6, which authorizes impoundment of the vehicle of a driver who has never been issued a driver's license. Ex. D to Cook Decl. at 37 (Docket No. 185-2). On September 1, 2011, Ruiz's vehicle was impounded for thirty days under the same provision. Ex. D to Cook Decl. at 32 (Docket No. 187).

Sandoval initially brought his claims against Sonoma County, the Sonoma County Sheriff's Department, and Sheriff Steve Freitas in his official and personal capacities. The County Defendants appealed a prior summary judgment order on grounds of sovereign immunity, Docket No. 70, resulting in the stay of Sandoval's claims against them. April 10, 2013 Order at 3-4 (Docket No. 92). Additionally, Sheriff Freitas was granted qualified immunity for Sandoval's due process claims against him in his personal capacity. January 31, 2014 Order at 11-12 (Docket No. 126). As a result, Sandoval's only active claim is against Sheriff Freitas in his personal capacity for Fourth Amendment violations.

Ruiz brought claims against the City of Santa Rosa, the Santa Rosa Police Department, and Santa Rosa Chief of Police Tom Schwedhelm in his official and personal capacities. Ruiz has active Fourth Amendment and due process claims against all of these Defendants.

Ruiz had a friend with a California driver's license who could have taken possession of his vehicle at the time of its impoundment. Ruiz Dep. at 73-76. At the time of his impoundment, Ruiz had repeatedly pled guilty to misdemeanor charges of driving without a license under Vehicle Code section 12500, which prohibits California residents from driving without a license issued by the state of California, subject to certain exceptions not relevant here. Ruiz Dep. at 35; Minute Order in *People v. Ruiz*, No. SCR-538128 (Sonoma Cnty. Sup. Ct. 2008), Ex. C to Request for Judicial Notice (Docket No. 196); Minute Order in *People v. Ruiz*, No. SCR-569380 (Sonoma Cnty. Sup. Ct. 2009) Ex. D to Request for Judicial Notice.[1] Related to those earlier citations, Ruiz was also cited for

---

[1] For the purposes of these cross-motions, the Court takes judicial notice of the existence of these minute orders, as well as the state court order in *Martinez v. City of Santa Rosa*,

United States District Court
Northern District of California

driving with a child without a seat belt, driving without current tags, and for not stopping at a stop sign, although the latter two citations were dismissed in court. Ruiz Dep. at 34; Minute Order in *People v. Ruiz*, No. SCR-538128 (2008) (citation for expired tags dismissed); Minute Order in *People v. Ruiz*, No. SCR-569380 (2009) (citation for failing to stop dismissed).

Ruiz challenged the impoundment at issue in this case at the Santa Rosa Police Department on September 6, 2011, but his request for release was denied. Santa Rosa Police Department Record, Ex. D to Jackson Decl. at 1 (Docket No. 195). As a result of being without a car, Ruiz missed at least one week of work. Ruiz Dep. at 88. Ruiz obtained his car after the thirty-day impoundment period by paying a storage fee. Ex. D to Cook Decl. at 33 (Docket No. 187).

On August 22, 2014, the parties stipulated to seek partial summary judgment on a "key legal question," the resolution of which they agreed "will significantly and materially affect the resolution of Fourth Amendment claims in the case, including putative class issues." August 22, 2014 Stipulation and Order at 2 (Docket No. 178). Plaintiffs identified the question as follows:

> Assuming that the initial seizure and towing of Plaintiffs' vehicles was lawful under both state and federal law, can Defendants justify, under the Fourth Amendment, the warrantless seizures of Plaintiffs' vehicles for the 30-day time period provided in California Vehicle Code § 14602.6?

*Id.*

On September 1, 2014, Plaintiffs moved to certify their class, even though they had previously stipulated that resolution of the cross-motions for summary judgment will affect the resolution of putative class issues. Mot. for Class Certification (Docket No. 179). The Court vacated that motion, in order to decide these cross-motions for partial summary judgment first. September 22, 2014 Order at 3 (Docket No. 193).

//

pursuant to the City Defendants' unopposed request for judicial notice (Docket No. 196). Fed. R. Evid. 201(b)(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

**LEGAL STANDARDS**

**A.  Summary Judgment**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  At the summary judgment stage, the court may not weigh the evidence and must view it in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.  Qualified Immunity**

Qualified immunity "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."  *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).  "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law . . . ."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct . . . every reasonable official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (internal quotation and citation omitted).  Qualified immunity does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.*

**C.  The Fourth Amendment**

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions."  *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotations and citation omitted).  Moreover, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests," for example by retaining property for an unreasonably long

United States District Court
Northern District of California

time.  *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25 (1984) (citing *United States v. Place*, 462 U.S. 696, 709-710 (1983)).  In such cases, the individual's interest in possession must be balanced against the government's interest in retaining the property. *United States v. Sullivan*, 753 U.S. 845, 855 (9th Cir. 2014) (citing *Place*, 462 U.S. at 703).

**DISCUSSION**

These cross-motions for summary judgment center on a fairly straightforward question: assuming that Plaintiffs' vehicles were lawfully seized in the first place, whether their thirty-day impoundment can be justified under the Fourth Amendment.  However, the parties also dispute whether the impoundments at issue should be analyzed under the Fourth Amendment or due process law.  Moreover, the individually named Defendants assert defenses of qualified immunity.  Deciding whether the Fourth Amendment applies to such ongoing seizures also determines the applicable law for both qualified immunity and the merits; it is therefore a threshold issue that must be decided first.  The Court concludes that the Fourth Amendment applies to Plaintiffs' claims in these motions, that the individual Defendants are entitled to qualified immunity, and that the City Defendants' thirty-day impoundment of Plaintiff Ruiz's car violated the Fourth Amendment, as discussed below.

**I. The Fourth Amendment Applies to Plaintiffs' Claims and Governs This Analysis**

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend. IV.  A warrantless seizure that was valid at its inception may become unreasonable by virtue of a delay in time.  *Place*, 462 U.S. at 709-710.  The Ninth Circuit has repeatedly applied the Fourth Amendment's reasonableness analysis to the question of whether the government's prolonged, warrantless retention of seized property is constitutional.  *E.g.*, *Sullivan*, 753 F.3d at 855-56 (consensual twenty-one day seizure of laptop held reasonable); *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988) (seven to twenty-three day warrantless seizures of mailed packages held unreasonable).  The Ninth

5

1   Circuit has also analyzed property seizures under the Due Process clause of the Fourteenth

2   Amendment, sometimes in conjunction with a Fourth Amendment analysis.  *E.g.*, *Lavan v.*

3   *City of Los Angeles*, 693 F.3d 1022, 1029-32 (9th Cir. 2012) (holding that both the Fourth

4   and Fourteenth Amendments applied to protect homeless plaintiffs' possessory interest in

5   their unattended personal belongings).

6          Defendants have not identified a single Ninth Circuit case holding that only the Due

7   Process clause applies if the Fourth Amendment was satisfied at the time of the initial

8   seizure.  The closest Ninth Circuit case they cite for that proposition is *Stypmann v. City*

9   *and County of San Francisco*, 557 F.2d 1338 (9th Cir. 1977).  In that case, the plaintiffs

10  successfully challenged the impoundments of their vehicles without a hearing as violating

11  due process.  *Id.* at 1342.  However, the Fourth Amendment was not even discussed.  The

12  mere fact that plaintiffs in an earlier case brought a due process claim under slightly

13  similar facts does not render the Fourth Amendment irrelevant here.

14         To the contrary, in a Supreme Court case where the defendant Sheriff argued that

15  the seizure of a mobile home must be analyzed under the Fourteenth Amendment instead

16  of the Fourth Amendment, the Court responded, "we see no basis for doling out

17  constitutional protections in such fashion.  Certain wrongs affect more than a single right

18  and, accordingly, can implicate more than one of the Constitution's commands."  *Soldal v.*

19  *Cook County, Illinois*, 506 U.S. 56, 70 (1992).  Accordingly, the Court reversed the

20  Seventh Circuit's decision that the plaintiffs could only challenge the seizure under the

21  Fourteenth Amendment.  *Id.*

22         Nevertheless, other circuits have directly considered this question and have

23  concluded that a seizure of property that was valid at its inception cannot amount to a

24  Fourth Amendment violation merely as a result of the delay.  In *Lee v. City of Chicago*, the

25  Seventh Circuit discussed at length the question of whether the ongoing impoundment of a

26  vehicle after a valid initial seizure should be analyzed under the Fourth Amendment or the

27  Due Process clause.  330 F.3d 456, 460-65 (7th Cir. 2003).  That court concluded that a

28  "seizure" was a particular act of depriving an individual of a property interest, and that

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1  once the initial seizure was completed, the ongoing retention of property only implicated

2  due process concerns.  *Id.* at 466; *see also Fox v. Van Oosterum*, 176 F.3d 342, 250 (6th

3  Cir. 1999).  The court distinguished *Place* as concerning the narrow question of when a

4  *Terry* stop matures into a "full-blown seizure," not when a reasonable seizure becomes

5  unreasonable.  *Lee*, 330 F.3d at 464.  *Soldal* was distinguished as only concerning an

6  individual's interest in preventing an initial seizure, not an ongoing one.  *Id.* at 466.

7      Here, in the Ninth Circuit, the Fourth Amendment protects Plaintiffs' interest in

8  possessing property that has been validly seized.  Plaintiffs framed their motion for partial

9  summary judgment as a Fourth Amendment question.  In the parties' stipulation, Plaintiffs

10  identified the question for summary judgment as follows:

11          Assuming that the initial seizure and towing of Plaintiffs'
            vehicles was lawful under both state and federal law, can
12          Defendants justify, under the Fourth Amendment, the
            warrantless seizures of Plaintiffs' vehicles for the 30-day time
13          period provided in California Vehicle Code § 14602.6?

14  Stipulation and Order at 2.  The Ninth Circuit has repeatedly employed a Fourth

15  Amendment analysis for delays in returning seized property, so Plaintiffs are entitled to

16  pursue this theory now.

17      Defendants' reliance on *Lee* is not convincing.  *Lee* is an out-of-circuit case that

18  does not control this Court's analysis.  If this case were in the Seventh Circuit, it appears

19  that Defendants would have a strong argument that Plaintiffs cannot proceed under a

20  Fourth Amendment theory.  However, as already discussed, the Ninth Circuit recognizes

21  this theory of Fourth Amendment protection, in conjunction with the Fourteenth

22  Amendment.

23      Moreover, the Court is not persuaded by *Lee's* interpretation of *Place*.  The *Lee*

24  court reasoned that "*Place* and its progeny deal only with the transformation of a

25  momentary, investigative detention into a seizure."  330 F.3d at 464.  However, The

26  Supreme Court in *Place* found that "There is no doubt that the agents made a 'seizure' of

27  Place's luggage for purposes of the Fourth Amendment *when, following his refusal to*

28  *consent to a search, the agent told Place that he was going to take the luggage to a federal*

7

*judge . . . ."  Place*, 462 U.S. at 707 (emphasis added).  Although the Fourth Amendment seizure began at that moment, the Court held that "The length of the detention of respondent's luggage alone precludes the conclusion that the seizure was reasonable in the absence of probable cause."  *Place*, 462 U.S. at 707, 709.  The existence of a seizure did not depend on its length; rather, there clearly was a seizure, and its length was what made it unreasonable.  Contrary to the Seventh Circuit's reading, *Place* stands squarely for the claim that a seizure reasonable at its inception can become unconstitutionally unreasonable due to its duration, as the Supreme Court itself has recognized.  *Jacobsen*, 466 U.S. at 124 & n.25.

Finally, the Court is not persuaded by Defendants' argument that seizures in criminal cases such as *Dass* and *Sullivan* are categorically different than the "administrative" or "civil" seizures at issue here.  None of the Ninth Circuit or Supreme Court cases cited draw such a distinction.  The Fourth Amendment protects an individual's interest in possessing his property, and that interest is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual.

Because the Ninth Circuit clearly recognizes the Fourth Amendment's protection of an individual's interest in possessing his property even after it was lawfully seized, Plaintiffs can bring their claim under the Fourth Amendment here.

## II. Sheriff Freitas and Police Chief Schwedhelm are Entitled to Qualified Immunity

In a section 1983 claim, qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A Court may grant "qualified immunity on the ground that a purported right was not 'clearly established' by prior case law . . . ."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citing *Pearson*, 555 U.S. at 227).

United States District Court
Northern District of California

A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle*, 132 S. Ct. at 2093 (citation and quotation marks omitted). While there need not be a "case directly on point," *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), the plaintiff nonetheless "bears the burden of proving that the rights she claims were 'clearly established' at the time of the alleged violation," *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998).

Here, there was no clear consensus placing the unconstitutionality of the thirty-day impounds "beyond debate" when they occurred in 2011. Plaintiffs rely primarily on *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005), which held that a warrantless vehicle impoundment was not justified by the community caretaking exception, and therefore violated the Fourth Amendment, when the vehicle was safely parked at home and there was no public safety rationale for removing the vehicle from the streets. *Id.* at 865-66. Plaintiffs also claim that *Soldal* and *Place* establish that a seizure can be unreasonable as the result of a delay before obtaining a warrant. Putting these together, Plaintiffs argue that the thirty-day warrantless impoundment of their vehicles violated clearly established law.

Plaintiffs' argument is unsuccessful because none of these cases are sufficiently similar to the thirty-day impounds at issue here to overcome qualified immunity. As is discussed more below, *Miranda* was a different case, because it concerned an initial seizure under the community caretaking doctrine, whereas the parties here have stipulated for purposes of these cross-motions that the initial seizures were justified. While *Miranda*'s reasoning is instructive in deciding the merits in this case, it does not by itself establish that the ongoing impoundment of a vehicle violates the Fourth Amendment when the initial seizure was valid.

Similarly, the Supreme Court cases are not close enough on point to clearly establish Plaintiffs' claimed right. None of those cases concerned a vehicle impoundment

9

United States District Court
Northern District of California

for which the initial seizure was presumed valid.  *Soldal* concerned the removal of and related damage to a mobile home; the plaintiffs in that case did not admit that the initial seizure was valid, as Plaintiffs here do for purposes of this motion.  506 U.S. at 58-59, 61. *Place* concerned the ninety-minute seizure of luggage without probable cause, and the Court's reasoning depended on the possessory interests of passengers moving through transportation terminals and the problems with stopping someone on less than probable cause.  462 U.S. at 709-10.  Although both of these cases support Plaintiffs' claims on the merits, they arose in such different factual circumstances that they do not clearly establish that, even where the initial seizure of a vehicle is valid, the thirty-day warrantless impoundment of that vehicle is a Fourth Amendment violation.

Considering the qualified immunity of Police Chief Schwedhelm,[2] the Ninth Circuit upheld thirty-day impounds under the same California statute in early 2011 in the unpublished case of *Salazar v. City of Maywood*, 414 F. App'x 73 (9th Cir. Feb. 8, 2011). Although *Salazar* primarily addressed a due process challenge, it undermines Plaintiffs' claims that the unconstitutionality of these seizures was beyond debate in 2011.

Especially relevant to the authority for the impoundment of Plaintiff Ruiz's vehicle was a tentative ruling issued by the Sonoma County Superior Court two days before his vehicle's seizure, in which the court upheld a seizure and impoundment under facts very similar to Ruiz's situation.  *Martinez v. City of Santa Rosa*, No. SCV-249845 (Sonoma Cnty. Sup. Ct. Aug. 30, 2011).  Although that court declined to consider whether the Mexico-licensed driver in that case was covered by Vehicle Code section 14602.6, it found that he was nonetheless a California resident driving without a license who had previously been convicted for misdemeanor unlicensed driving, so his vehicle's impoundment was mandatory under the civil forfeiture provision of section 14607.6.  The court held that a possible legal error in citing 14602.6 (thirty-day impoundment for never-licensed driving)

---

[2] The Ninth Circuit decided *Salazar* in February 2011, shortly after the seizure of Sandoval's vehicle in January, so its opinion is not directly relevant to the qualified immunity analysis of Defendant Freitas.

United States District Court
Northern District of California

instead of 14607.6 (impoundment for repeat violations) was not sufficient to invalidate the impoundment.

The result of these cases is that Plaintiffs have not shown that their vehicles' thirty-day impoundment was clearly unconstitutional. These motions ask the Court to assume that the initial seizures were valid, and only decide whether the thirty-day impoundments can be justified. *Miranda* provides only scant guidance on that specific issue, and the Supreme Court cases cited by Plaintiffs concerned different factual settings with different balances of government and individual interests. Moreover, the City Defendants could point to Ninth Circuit and state court authority upholding similar impoundment periods on similar facts. The law was not sufficiently clear to eliminate qualified immunity for Defendants Sheriff Freitas and Police Chief Schwedhelm. Therefore, these Defendants, in their personal capacities, do not need to defend against the claim that these impoundments were unconstitutional as a result of an unreasonable delay.

Applying qualified immunity requires granting Defendant Freitas's motion and denying Sandoval's motion. However, Ruiz's motion can still proceed against the City Defendants, except for Defendant Schwedhelm in his personal capacity.

### III. The Warrantless Impoundment of Plaintiff Ruiz's Vehicle for Thirty Days Violated the Fourth Amendment

As noted above, the Fourth Amendment prohibits unreasonable seizures. "A seizure conducted without a warrant is *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001) (internal quotations and citation omitted). The question presented by this motion asks the Court to assume that the initial warrantless vehicle seizures were valid. The City Defendants[3] raise

---

[3] Because Defendant Freitas is entitled to qualified immunity, as discussed in Part II above, the only remaining active claim for this motion is Plaintiff Ruiz's Fourth Amendment claim against the City Defendants.

1    three arguments for why the thirty-day seizure of Plaintiff Ruiz's vehicle was reasonable,

2    in spite of the lack of a warrant: first, it was authorized by state law; second, the

3    community caretaking exception applied; and third, it was plainly reasonable to

4    temporarily seize the vehicle of a dangerous driver such as Plaintiff Ruiz.  None of these

5    arguments are convincing.

6

7    **A.  State Law Authorization Alone Does Not Satisfy the Fourth Amendment**

8         Defendants' first argument is that the thirty-day impound of Ruiz's vehicle

9    was reasonable because it was authorized by California Vehicle Code section 14602.6.

10   That statute authorizes the thirty-day impound of a vehicle when, among other things,

11   a driver is cited for "driving a vehicle without ever having been issued a driver's license."

12   Cal. Veh. Code § 14602.6.  In support of this provision, the Legislature found that

13   unlicensed drivers "are involved in a disproportionate number of traffic incidents" and that

14   "seizing the vehicles used by unlicensed drivers serves a significant governmental and

15   public interest, namely the protection of the health, safety, and welfare of Californians

16   from the harm of unlicensed drivers."  Cal. Veh. Code § 14607.4.  City Defendants argue

17   that Ruiz was covered by the statute, and that this was sufficient to justify the thirty-day

18   impound under the Fourth Amendment.  City Defendants' Opp'n at 14 (Docket No.

19   194).  Plaintiffs argue that Ruiz was not covered by the statute, because he had previously

20   been issued a driver's license in Mexico, and that in any event a state law cannot

21   circumvent the Constitution.  Mot. at 2 n.3 & 5; Reply at 11.

22        Defendants' argument is not supported by case law.  The mere fact that a state has

23   authorized a search or seizure does not render it reasonable under the Fourth Amendment.

24   *Sibron v. New York*, 392 U.S. 40, 61 (1968) (a state may not "authorize police conduct

25   which trenches upon Fourth Amendment rights"); *Miranda*, 429 F.3d at 864 ("We begin

26   with the premise, apparently not recognized by the Defendants, that the decision to

27   impound pursuant to the authority of a city ordinance and state statute does not, in and of

28   itself, determine the reasonableness of the seizure under the Fourth Amendment . . . .").

United States District Court
Northern District of California

Indeed, in *Miranda*, the question was also whether the seizure of a vehicle could be justified by reference to a state statute. Although the issue in that case was the initial seizure, rather than the prolonged detention of the car, the same reasoning applies, because both cases concern a possessory interest protected by the Fourth Amendment, as discussed in Part I, above.

It also must be noted that Ruiz had been issued a Mexican driver's license prior to the impoundment of his vehicle, so he was not driving without having ever been issued a driver's license. He was therefore outside of the scope of section 14602.6. Yet this was the section cited by the City for his vehicle's impoundment. Ex. D to Cook Decl. (Docket No. 187). As discussed in Part III-C, below, his vehicle's impoundment may have been authorized by other statutes if the City had taken a different type of enforcement action, but those provisions require involving the courts, unlike section 14602.6.

In sum, statutory authorization alone does not satisfy the Fourth Amendment's requirement of reasonableness, nor did Ruiz's impoundment even fall within the scope of the statute cited by Defendants.

## B. The Community Caretaking Exception Does Not Apply

The City Defendants' second argument is that the community caretaking exception applies in this case, rendering the thirty-day seizures reasonable. The community caretaking exception allows the police to remove a vehicle from the streets, without a warrant, when the vehicle poses an obstacle to the flow of traffic or otherwise jeopardizes public safety. *Miranda*, 429 F.3d at 864. Courts are unwilling to expand the community caretaking exception beyond those narrow circumstances, and the government has the burden of proving that the exception actually applied in the case at hand. *See United States v. Cervantes*, 703 F.3d 1135, 1141-42 (9th Cir. 2012); *United States v. Caseres*, 533 F.3d 1064, 1074-75 (9th Cir. 2008). The reasonableness of a seizure under the community caretaking exception depends on the facts of the individual case. *Miranda*, 429 F.3d at 864.

United States District Court
Northern District of California

Once the vehicle has been removed from the street, or the threat to public safety has been removed, the community caretaking exception no longer justifies the warrantless seizure of property, so long as a licensed driver can take possession of the car.  *See id.* at 863-64; *see also Salazar v. Schwarzenegger*, No. 07-CV-01854-SJO, at *5 (C.D. Cal. Sept. 9, 2008) ("[T]he community caretaking doctrine only justifies a 30-day impoundment period when no licensed driver is available to retrieve and legally move the car.").

The community caretaking exception cannot be used to deter unlawful driving. *Miranda*, 429 F.3d at 866.  In *Miranda*, the Ninth Circuit held that the community caretaking exception only applied to the narrow circumstances of removing a car from the streets, and would not be expanded to justify the seizure of a family's vehicle in order to prevent an unlicensed driver from driving again.  *Id.*  The court rejected the argument that a vehicle could be impounded to deter future unlawful driving:

> Such a rationale would expand the authority of the police to impound regardless of the violation, instead of limiting officers' discretion to ensure that they act consistently with their role of "caretaker of the streets." . . . [T]he deterrence rationale is incompatible with the principles of the community caretaking doctrine.  Unlike in civil forfeitures, where the seizure of property penalizes someone who has been convicted of a crime, the purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard.  The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the "caretaker" rationale.

*Id.* at 866.

Here, even assuming that Ruiz's vehicle was lawfully impounded pursuant to the community caretaking exception, that exception cannot justify the *ongoing* seizure of the vehicle after it has been removed, much less for an arbitrary period of thirty days.

The most obvious distinction between this case and *Miranda* is that *Miranda* primarily concerned the initial decision to impound, whereas this motion assumes that the initial seizure was valid and only considers the prolonged, thirty-day period of impoundment.  Still, while *Miranda* does not control the outcome here, its reasoning is powerful and instructive: the deterrence rationale cannot support the application of the

United States District Court
Northern District of California

1  community caretaking doctrine, because doing so would expand what is supposed to be a
2  narrow exception to the warrant requirement.

3       Defendants argue that, even after the initial seizure of the vehicle, the community
4  caretaking exception should apply because Ruiz was an unsafe driver, and keeping him off
5  the road for thirty days will make the public safer.  Defendants point to the California
6  Legislature's determination that unlicensed drivers are more likely to be unsafe drivers.
7  This argument is unpersuasive, for several reasons.

8       First, Defendants cannot rely on the generalized legislative findings of section
9  14607.4 to show that Ruiz was unsafe.  As already noted, Ruiz previously received a
10  license to drive in Mexico and so was not driving "without ever having been issued a
11  driver's license" under section 14602.6.  For this reason, the findings of section 14607.4
12  carry little weight as to a driver such as Ruiz.  Furthermore, as *Miranda* made clear, the
13  application of the community caretaking doctrine must turn on the facts of the individual
14  case, not the generalized findings of a legislature.

15       Second, Defendants offer virtually no evidence that Ruiz himself was unsafe.  The
16  mere fact that Ruiz had prior convictions for driving without a license is not relevant to
17  whether or not he was a safe driver.  And while Ruiz had previously been cited for driving
18  with a child outside of a seatbelt and for failing to stop at a stop sign, the circumstances of
19  those citations do not suggest that Ruiz was unsafe.  For the former citation, Ruiz's young
20  son was taken out of his car seat by Ruiz's wife because he was crying – hardly suggestive
21  of Ruiz's own unsafe driving.  Ruiz Dep. at 33.  Regarding the latter, while such a citation
22  is probative, the Court does not believe that a single citation for failing to come to a
23  complete stop at a stop sign is persuasive evidence that a driver is unsafe.  Nor do the City
24  Defendants point to those citations for that purpose; instead, they emphasize that Ruiz was
25  repeatedly cited for driving without a license.

26       Third, Defendants' argument is essentially that Ruiz should be deterred from
27  driving without a license, but the *Miranda* court held that deterrence is not an appropriate
28  reason to apply the community caretaking exception.  Fourth, Defendants' argument

United States District Court
Northern District of California

15

makes little sense when they admit that, after the thirty-day period was over, Ruiz was able to obtain his car by merely paying a storage fee; he did not need to take any steps to prove that he was a licensed driver, or that he was no longer "unsafe." And finally, Ruiz had a friend with a valid California driver's license who could have legally driven the car away even before the thirty-day period was over. Ruiz Dep. at 73-76. For all of these reasons, the community caretaking exception does not apply here.

## C. The Thirty-Day Impoundment of Plaintiff Ruiz's Vehicle was Unreasonable

The City Defendants argue that, even if the community caretaking exception does not apply, the seizure of Plaintiff Ruiz's vehicle passes the ultimate test of "reasonableness" under the Fourth Amendment. "'A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions. The burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement.'" *Miranda*, 429 F.3d at 862 (quoting *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)).

To determine whether a prolonged warrantless seizure was reasonable, a reviewing court will "balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *United States v. Sullivan*, 753 F.3d 845, 855 (9th Cir. 2014) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). "Such determinations are made on a case-by-case basis." *Sullivan*, 753 F.3d at 855.

Two informative cases addressing whether or not a prolonged warrantless seizure of property was reasonable are *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), and *Sullivan*, 753 F.3d 845. In *Dass*, a case about distributing marijuana out of Hawaii through the mail, the court found that mailed packages were unreasonably seized, and therefore could not be used as evidence in a criminal case, where the warrants for those packages were obtained seven to twenty-three days after a dog sniff had identified them as carrying

16

marijuana.  The court was "reluctant to extend the *Van Leeuwen* outer boundary of 29 hours [to obtain a warrant] to a period not measured in hours, but rather in days and weeks."  849 F.2d at 415 (citing *United States v. Van Leeuwen*, 397 U.S. 249 (1970)).  Although the court did not explicitly comment on the public's interest in possessing its packages, "*Dass* implicitly determined that such a lengthy retention of mailed packages constituted a substantial intrusion into the possessory interests of the individuals who placed the packages in the mail."  *Sullivan*, 753 F.3d at 845.

In *Sullivan*, a case about a conviction for child pornography, the court held that the twenty-one day delay between seizing a laptop and obtaining a warrant was reasonable under the facts of that case.  753 F.3d at 856.  The court considered the fact that Sullivan was already a parolee subject to a consent condition for seizure and that he was incarcerated during the delay, both of which reduced his possessory interest in the laptop.  *Id.*  The court also considered the fact that Sullivan consented to the seizure seventeen days in.  *Id.*  On the other side of the scale, the government had a significant interest in supervising parolees and in seizing a laptop that contained evidence, as well as in transferring the laptop from the parole officers to the Berkeley police to perform the search.  *Id.*  *Dass* was distinguished, because it concerned the possessory interests of the general public, not a parolee under a consent-to-seizure condition.  *Id.* at 857.

An individual has a significant interest in possessing the vehicle he owns.  "The private interest in the uninterrupted use of an automobile is substantial.  A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed."  *Stypmann v. City and County of San Francisco*, 557 F.2d 1342-43 (9th Cir. 1977).  Although *Stypmann* concerned a due process challenge, as discussed above, its reasoning regarding an individual's interest in possessing his automobile applies equally in the Fourth Amendment context.

Here, the thirty-day impound of Ruiz's vehicle was unreasonable.  Ruiz's possessory interest was infringed by not being able to use his car for thirty days.  For many people, the use of a car is essential for such necessary activities as getting to work and

17

purchasing food; the loss of a vehicle for thirty days can cause a significant disruption in a person's life.  Indeed, Ruiz missed a week of work as a result of being without a vehicle.  Ruiz Dep. at 88.  Also, unlike the plaintiff in *Sullivan*, who consented to the government's seizure of his laptop, here Ruiz challenged his vehicle's impoundment five days after its initial seizure, manifesting a denial of consent.  Santa Rosa Police Department Record, Ex. D to Jackson Decl. at 1.

However, other considerations weaken Ruiz's possessory interest.  As noted above, the individual in *Sullivan* was under a consent-to-seizure condition of parole.  Here, Ruiz had repeatedly been convicted of driving without a California license.  There is good reason to think that he was not legally able to drive in California at the time of his vehicle's impoundment, since he was likely a California resident without a California license.  *See* Ruiz Dep. at 14-15.  Accordingly, the Court concludes that Ruiz had a somewhat reduced interest in the possession of his vehicle at that time, at least until he obtained a California license.

Nonetheless, Ruiz's interest in possession outweighs the government's interest in the warrantless impoundment of his vehicle for thirty days.  The City's primary stated reason for withholding the car for thirty days was to protect the public from an unsafe driver.  As noted above, however, the City has provided only limited evidence that Ruiz was an "unsafe" driver, as opposed to merely a driver unlicensed by the State of California.  The City's concern about public safety is belied by the fact that, after thirty days, it was willing to release the vehicle to Ruiz without him taking any steps to prove that he was safe, or had been licensed by the state.

It is also important to note that the City had alternative means available under state law to protect the public, if it truly believed that Ruiz was an unsafe driver.  Specifically, the City could initiate forfeiture proceedings under California Vehicle Code section 14607.6.  Or, the City could pursue a criminal prosecution under sections 12500 and 40000.11.  The City could have used these methods of enforcement, but it did not.  While the City argues that its greater power to initiate these proceedings implies the lesser power

18

of seizing the vehicle for thirty days, that argument misses the crucial distinction that the forfeiture and criminal processes are conducted in the courts.  *See* Cal. Veh. Code § 14607.6 (e)(1)-(5) (owner of vehicle subject to forfeiture may challenge forfeiture in court, where "[t]he burden of proof in the civil case shall be on the prosecuting agency").  Here, by contrast, the thirty day impoundment was warrantless, and therefore without judicial review.  The mere fact that other sources of authority could have applied does not make reasonable the process that actually was applied, especially when the government has the burden of justifying a warrantless seizure.

It must be acknowledged that Ruiz's seizure was not completely without review.  Ruiz challenged his vehicle's impoundment at a tow hearing on September 6, 2011, five days after its initial seizure.  Although no Defendant argues that this hearing satisfies the warrant requirement, they do argue that this process is sufficient to render the ongoing seizure reasonable.  However, the availability of a tow hearing here is not sufficient to render the seizure reasonable, where the Defendants' stated reason of protecting public safety does not stand up to scrutiny.

Because the thirty-day impoundment of Ruiz's vehicle was without a warrant, and neither the California statute, nor the community caretaking exception, nor the reasonableness of the seizure can justify it, the impoundment violated the Fourth Amendment.

**IV. Plaintiffs' Additional Questions are Not Considered Here**

As already noted, the parties stipulated to the resolution of a particular Fourth Amendment question.  However, Plaintiffs exceeded the scope of the stipulation by asking the Court to decide issues besides that question, such as whether the City Defendants violated the California constitution, whether the seizures were inherently coercive under California Civil Code section 52.1 (b), and whether Plaintiffs are entitled to recover damages for any of these violations.  Ruiz Mot. at 1-2 (Docket No. 186-1).  Defendants rightly point out that these additional issues are outside of the stipulated Fourth

1    Amendment question.  As a result, these portions of Plaintiff Ruiz's motion are DENIED

2    without prejudice.

3

4    **V. The Schedule for Plaintiffs' Motion for Class Certification**

5         At the October 27, 2014 hearing and case management conference, the parties

6    presented differing views regarding the schedule and procedural posture of Plaintiffs'

7    possibly forthcoming motion for class certification.  However, the parties agreed that they

8    should meet and confer within five days of the filing of this Order to discuss its effect on

9    settlement negotiations and such a motion for class certification.

10        The Court has considered the need to incorporate the holding and reasoning of this

11   Order in the motion for class certification, as well as the potential prejudice to Defendants

12   in any further delay.  The Court has also considered Defendants' argument that Plaintiffs

13   should only be entitled to file a Reply to their previously filed motion for class

14   certification, rather than a new motion.  However, the Court concludes that, in order to

15   incorporate the reasoning of this Order and adequately brief the merits of class

16   certification, more than a Reply is required.  The parties shall meet and confer as

17   suggested, no later than five days after the filing of this Order.  If Plaintiffs decide to

18   pursue a class action after meeting and conferring with Defendants, Plaintiffs shall file a

19   new motion for class certification no later than **December 8, 2014**, to be noticed and

20   briefed in accordance with Civil Local Rules 7-2 and 7-3.

21

22   **CONCLUSION**

23        Plaintiffs bring this motion under the Fourth Amendment, and Defendants have

24   failed to show that the Due Process clause should be applied instead.  However,

25   Defendants Freitas and Schwedhelm are entitled to qualified immunity for this claim,

26   because Plaintiffs have failed to show that the thirty-day impoundments violated clearly

27   established law.  Therefore, Plaintiff Sandoval no longer has an active claim for this

28   motion.  Nonetheless, Plaintiff Ruiz has shown that the warrantless thirty-day

United States District Court
Northern District of California

20

impoundment of his vehicle violated the Fourth Amendment.  Accordingly, the Court DENIES Plaintiff Sandoval's motion, GRANTS Plaintiff Ruiz's motion as to the stipulated Fourth Amendment question against the entity City Defendants, DENIES Plaintiff Ruiz's motion as to the additionally raised issues and as to Defendant Schwedhelm in his personal capacity, GRANTS Defendant Freitas's cross-motion for qualified immunity, GRANTS the City Defendants' cross-motion for qualified immunity as to Defendant Schwedhelm in his personal capacity, and DENIES that cross-motion as to the stipulated Fourth Amendment question.

**IT IS SO ORDERED.**

Dated:   10/29/2014          _____

                            THELTON E. HENDERSON

                            United States District Judge