UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MATEOS SANDOVAL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, et al.,<br><br>Defendants. | Case No. 11-cv-05817-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter came before the Court on February 2, 2015, on Defendant Sheriff Steve Freitas's motion for summary judgment. The Court has carefully considered the arguments of the parties at the hearing and in the papers submitted, and hereby GRANTS Defendant's motion, for the reasons set forth below.

**BACKGROUND**

Plaintiffs Rafael Mateos-Sandoval ("Sandoval") and Simeon Avendano Ruiz ("Ruiz") challenge the impoundment of their vehicles for driving without a license. Both Plaintiffs had previously been issued driver's licenses in Mexico. Sandoval Dep., Ex. D to Keck Decl. at 13 (Docket No. 198); Ruiz Dep., Ex. A to Jackson Decl. at 19 (Docket No. 195). On January 27, 2011, Sandoval's truck was seized by the Sonoma County Sheriff's Office and impounded for thirty days under California Vehicle Code section 14602.6, which authorizes the impoundment of the vehicle of a driver who has never been issued a driver's license. Ex. D to Cook Decl. at 37 (Docket No. 185-2). On September 1, 2011, Ruiz's vehicle was impounded for thirty days under the same provision. Ex. D to Cook Decl. at 32 (Docket No. 187).

Sandoval initially brought his claims against Sonoma County, the Sonoma County Sheriff's Office, and Sheriff Steve Freitas in his official and personal capacities. The County Defendants appealed a prior summary judgment order on grounds of sovereign

immunity, Docket No. 70, resulting in the stay of Sandoval's claims against them. Apr. 10, 2013 Order at 3-4 (Docket No. 92). Additionally, Sheriff Freitas was granted qualified immunity for Sandoval's due process claims against him in his personal capacity, as well as Sandoval's claim that the extended nature of the impoundment violated the Fourth Amendment. Jan. 31, 2014 Order at 11-12 (Docket No. 126); Oct. 29, 2014 Order at 11 (Docket No. 205). As a result, Sandoval's only active claim is against Sheriff Freitas in his personal capacity for Fourth Amendment violations related to the initial seizure.

Sheriff Freitas now moves for summary judgment based on his qualified immunity for the only remaining claim against him in his personal capacity: that the initial seizure of Sandoval's vehicle violated the Fourth Amendment.

**LEGAL STANDARDS**

**I. Summary Judgment**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* At the summary judgment stage, the court may not weigh the evidence and must view it in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation and citations omitted).

## II. Qualified Immunity

Qualified immunity "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Qualified immunity applies unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).

## DISCUSSION

Defendant Sheriff Freitas moves for summary judgment based on his qualified immunity for the only remaining claim against him in his personal capacity: that the initial seizure of Plaintiff Sandoval's vehicle violated the Fourth Amendment. As noted above, qualified immunity applies unless a plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 2083 (quotations and citations omitted). This does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A government policymaker can be held liable under § 1983 where the policymaker formally or informally approved of a policy or custom of unconstitutional action. *Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978); *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). To be liable, the policymaker's action must be the "moving force" of the constitutional violation. *Monell*, 436 U.S. at 694.

3

A policymaker can be held individually liable even if his approval of unconstitutional conduct comes after a practice of such conduct has started. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). In *Larez*, the Los Angeles Chief of Police was found to be personally liable for the LAPD's excessive force violations, because he did nothing to correct a pattern of constitutional violations, and in fact personally signed a letter stating that the plaintiffs' alleged violations would not be investigated. *Id.*

However, "ratification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). For a policymaker to be held personally liable, he must have "set in motion a series of acts by others, or knowingly refused to terminate such acts, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (internal quotation omitted).

The remaining dispute in this case concerns the initial seizure of Plaintiff Sandoval's vehicle. "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). A warrantless automobile seizure is per se unreasonable, subject to limited exceptions; the government has the burden of proving the application of an established exception to the warrant requirement. *Id.* One such exception is for "community caretaking," whereby "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." *Id.* at 864. "An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location." *Id.* at 865. However, impoundment is not proper to enforce licensing laws or deter future traffic violations in the absence of community caretaking concerns. *Id.* at 865-66. When a vehicle must be removed from the streets under the community caretaking doctrine, an officer need not consider "the existence of alternative less intrusive means" to ordering its

1 impoundment, such as allowing the driver to make alternative arrangements for it. *Id.* at
2 865 and n.6 (quoting *Colorado v. Bertine*, 479 U.S. 367, 374 (1987)).

Here, Sheriff Freitas is entitled to qualified immunity, because Sandoval has not raised a genuine dispute as to whether Sheriff Freitas personally motivated a constitutional violation. Sandoval argues that Sheriff Freitas was personally responsible for his vehicle's impoundment, because his Office improperly impounded the vehicles of foreign-licensed drivers under an incorrect interpretation of state law. However, as discussed below, the relevant question is not whether Sheriff Freitas's Office followed state law, but rather whether Sheriff Freitas took any action that caused Sandoval's impoundment to be unreasonable under the Fourth Amendment.

There is scant evidence of any action on the part of Sheriff Freitas that would have caused a constitutional violation here. The Sheriff's Office policy at the time of Sandoval's vehicle's impoundment required non-evidentiary impoundments to comply with the community caretaking doctrine. Freitas Decl. at 2 (Docket No. 216-1); Ex. A to *id*. at 13. The deputy who ordered the impoundment of Sandoval's vehicle testified that he was aware of the policy and was acting in accordance with it when he ordered the impoundment of Sandoval's vehicle. Smith Decl. at 2, 4-5 (Docket No. 216-3).

In addition to this general policy, the facts of Sandoval's impoundment fall within the community caretaking exception, at least until Sandoval's neighbor arrived. After Sandoval's vehicle was pulled over for having a trailer hitch that obscured his license plate, the vehicle was parked in a "No Parking" zone that served as a bus stop on a public street. *Id.* at 3. The deputy testified that this location was in a high-crime area, and that if the vehicle were left there, it would be a target of theft and vandalism. *Id.* at 5. Because Sandoval was an unlicensed resident of California, he could not legally remove the vehicle from this location. *Id.* at 4. Moreover, at the time that the deputy ordered the impoundment and called the tow company, there were no licensed drivers present who could legally move the vehicle. *Id.*

Sandoval attempts to overcome this evidence by claiming that his vehicle's impoundment was actually motivated by a practice of impounding vehicles of foreign drivers without regard to community caretaking concerns. Opp'n at 3. The sum total of the evidence that Sandoval offers for this claim is that 1) the deputies did not allow a neighbor of Sandoval's to remove the car, even though the neighbor arrived after the tow truck had been called; 2) the tow report and subsequent internal investigation report do not discuss community caretaking factors in great depth; and 3) the Sheriff's counsel made legal arguments in this Court to the effect that the community caretaking doctrine did not need to be satisfied in this case. *Id.* at 4-6.

As to the first piece of evidence, the Deputy's refusal to allow a neighbor to drive the car away is only minimally probative of whether Sheriff Freitas approved of a practice of impounding vehicles without regard to the community caretaking exception. A much more likely explanation is that, after the tow truck was called, the deputy, in his own discretion, considered it appropriate to continue with the impoundment rather than turn the vehicle over to the neighbor. Even if the deputy's decision were improper, the only evidence of Sheriff Freitas's personal involvement is a statement made months later, suggesting that, overall, the impoundment was pursuant to department policy. *See* Cook Decl. at 3. This is not like the ratification of a widespread pattern of excessive force violations at issue in *Larez*; Sandoval has not shown that the practice here was unconstitutional, much less widespread.

Sandoval's second piece of evidence is that community caretaking factors are not discussed in the Office's reports regarding the impoundment. However, this absence from the tow report is best explained by the limited space on such forms for explaining tow decisions and the apparently routine application of those factors to Sandoval's own case. *See* Ex. A to Cook Decl. at 1 (Docket No. 219-1). Also, Sandoval's own report provides the location of the vehicle and cites the statute prohibiting driving without a license, which are both relevant to the community caretaking analysis because he could not have legally driven the vehicle away from its improper location. *Id.*

6

After the initial tow, the County provided Sandoval a hearing to challenge the impoundment, and later conducted an investigation into how the incident was handled. The tow hearing and investigation reports that followed do not support Sandoval's claim. Although Sandoval's counsel did claim at the tow hearing that the impoundment was not consistent with *Miranda*, the hearing officer concluded, reasonably, that the impoundment was justified based on the location of the vehicle and the fact that Sandoval and his passenger could not legally remove it. Ex. B to Cook Decl. at 1; Ex. B to Cook Supp. Decl. at 6-7 (Docket No. 226-1).[1] The remainder of the investigation concerned the separate issue of whether Sandoval was inappropriately denied a hearing when he first requested it. *See* Ex. B to Cook Supp. Decl. at 7. It is not surprising that the community caretaking discussion is a relatively small part of these reports, because the factors clearly applied in Sandoval's case.

Sandoval's third piece of evidence is that Defendants' counsel made legal arguments in 2013 to the effect that the community caretaking doctrine did not need to be satisfied in this case. However, these arguments are not evidence. "Legal memoranda and oral argument, in the summary-judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974). Even if these arguments were considered as evidence, moreover, their probative value is dwarfed by the Office's policy of requiring the community caretaking factors to be satisfied for all non-evidentiary seizures, and its application to Sandoval's case, discussed above.

Notably absent from Sandoval's argument is any affirmative evidence that the Office had a practice of impounding vehicles without considering the community caretaking requirements. There is no genuine dispute that the community caretaking

---

[1] The Court previously stated that it would not consider the evidence attached to the supplemental declaration, because it was filed late. Jan. 12, 2015 Order at 4 (Docket No. 231). However, Rule 56(c)(3) permits the Court to consider materials in the record beyond those which were filed in support of the instant motion. Fed. R. Civ. P. 56(c)(3). In the interests of justice, the Court therefore considered this evidence on its own initiative, and found that it does not support Plaintiff's claim.

exception applied to Sandoval's case, at least until his neighbor arrived. He apparently does not dispute that he was personally unable to legally drive his car away. He does not provide any examples of cases where the Office seized vehicles in violation of the community caretaking exception (except, arguably, his own after the neighbor arrived). And he does not provide any testimony suggesting that the Office had such a practice.

Sandoval argues that, because the Sheriff's Office had a policy of treating foreign licenses as invalid under the state's law prohibiting driving without ever having been issued a license, they must have also had a policy of impounding vehicles without considering the community caretaking factors. But these two policies are independent. The Office's interpretation of a licensing law is only relevant if the Office impounded vehicles under that law without requiring the community caretaking factors to be satisfied. As discussed above, Office policy was to consider community caretaking factors in every non-evidentiary impoundment case, and Sandoval has failed to raise a genuine dispute as to whether this policy was followed in practice.

Viewing the evidence presented in the light most favorable to Sandoval, there is not enough to create a genuine dispute that the Office had a practice of impounding vehicles without considering the community caretaking factors. A reasonable jury could not find for Sandoval on this issue.

Finally, Sandoval's supplemental briefing on standards for probable cause during an arrest of a person is inapposite and unpersuasive. The Court recognizes that probable cause to arrest a person can dissipate based on facts learned after the initial decision to arrest, which may in some cases require the termination of the arrest. *See, e.g.*, *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (2004). However, the seizure of a person involves a different balance of privacy and property interests than the seizure of a vehicle under the community caretaking exception, as *Miranda* itself recognized. 429 F.3d at 863 ("The reasonableness of a seizure under the 'caretaker' function differs from the bright-line rule concerning probable cause in the criminal context."). Sandoval provides no authority for applying this rule in the case of an automobile impoundment.

1    To the contrary, Sheriff Freitas points to *Bertine*, 479 U.S. 367, a case in which the
2    Court upheld an inventory search of a towed vehicle over the defendant's argument that
3    the Fourth Amendment required the police to provide "less intrusive means" for him to
4    secure his property. *Id.* at 373-74. The holding of *Bertine* (quoted with approval by
5    *Miranda*, 429 F.3d at 858 n.6) at least suggests that Deputy Smith was not required to
6    terminate the seizure once the neighbor arrived. More importantly, though, this argument
7    addresses whether the law regarding Deputy Smith's action was "clearly established," but
8    the Court does not reach this question, because Sandoval has not shown how Sheriff
9    Freitas caused any alleged violation of his rights.

Because the Office did not have a practice of impounding vehicles absent community caretaking concerns, Sandoval has not presented a theory of how Sheriff Freitas personally caused the allegedly unconstitutional seizure of Sandoval's vehicle. Sandoval's claim fails under the requirement, clearly established by *Iqbal*, *Hydrick*, *Levine*, *Christie*, and *Larez*, that a public official must have personally motivated a constitutional violation in order to be held personally liable. The Court does not reach the question of whether the deputy's seizure of the vehicle when the neighbor was present violated the Fourth Amendment, because there is no genuine dispute regarding the fact that Sheriff Freitas did not personally motivate that decision. As a result, Sheriff Freitas is entitled to qualified immunity.

**CONCLUSION**

Defendant Sheriff Freitas has shown that there is no genuine dispute as to the material fact that the Sonoma County Sheriff's Office required the community caretaking factors to be satisfied for all non-evidentiary vehicle impoundments, and that he did not personally cause an impoundment that violated the community caretaking factors in this case, nor approve of a pattern of such violations. As a result, Plaintiff Sandoval has not shown how Sheriff Freitas personally motivated a violation of Sandoval's constitutional rights, much less that Sheriff Freitas violated clearly established law. Defendant Sheriff

Freitas's motion for qualified immunity for the remaining Fourth Amendment claim against him in his personal capacity is GRANTED.

**IT IS SO ORDERED.**

Dated: 02/17/15

_____
THELTON E. HENDERSON
United States District Judge

United States District Court
Northern District of California