UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL MATEOS SANDOVAL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA, et al.,<br><br>Defendants. | Case No. 11-cv-05817-TEH<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

This matter is before the Court on Plaintiffs' motions for partial summary judgment (Docket No. 266) and class certification (Docket No. 265), as well as Defendant County of Sonoma's cross-motion for partial summary judgment (Docket No. 272). Pursuant to Civil Local Rule 7-1(b), the Court found these motions suitable for resolution without oral argument and vacated the hearing. June 19, 2015 Orders (Docket Nos. 276-77). After carefully considering the arguments of the parties in the papers submitted, the Court now GRANTS Plaintiff Mateos-Sandoval's motion for partial summary judgment, DENIES Defendant County of Sonoma's cross-motion for partial summary judgment, and DENIES Plaintiffs' motion for class certification, for the reasons set forth below.

**BACKGROUND**

The underlying facts of this case are by now familiar to all involved; the following summary provides the relevant context for these motions. Plaintiffs Rafael Mateos-Sandoval ("Mateos-Sandoval") and Simeon Avendano Ruiz ("Ruiz") challenge the impoundment of their vehicles for driving without a license. Both Plaintiffs had previously been issued driver's licenses in Mexico. Sandoval Dep., Ex. D to Keck Decl. at 13 (Docket No. 198); Ruiz Dep., Ex. A to Jackson Decl. at 19 (Docket No. 195). On January 27, 2011, Mateos-Sandoval's truck was seized by the Sonoma County Sheriff's

Office and impounded for thirty days under California Vehicle Code section 14602.6, which authorizes the impoundment of the vehicle of a driver who has never been issued a driver's license. Ex. D to Cook Sandoval Summary Judgment Decl. at 37 (Docket No. 185-2). On September 1, 2011, Ruiz's vehicle was impounded for thirty days under the same provision. Ex. D to Cook Ruiz Summary Judgment Decl. at 32 (Docket No. 187).

In October of 2014, on cross-motions for summary judgment, the Court found that the thirty-day impoundment of Plaintiff Ruiz's vehicle was unreasonable, and therefore violated the Fourth Amendment. October 29, 2014 Order at 19 (Docket No. 205). The Court held that, regardless of the validity of the initial seizure, it was unreasonable to hold Ruiz's car for thirty days under the facts of his case. *Id.*

In February of 2015, the Court denied Ruiz's motion to certify a class. February 3, 2015 Order at 10 (Docket No. 237). The Court found that Ruiz had failed to demonstrate numerosity, commonality, or typicality, as required under Rule 23(a). *Id.* at 3-10. In April, the Court denied Plaintiffs' motion for leave to amend the complaint in order to narrow the class definition, holding that "such amendment is unnecessary, [and therefore futile,] as the class definition is established, if at all, in the order certifying the class." April 17, 2015 Order at 4 (Docket No. 260).

Mateos-Sandoval now moves for partial summary judgment on the same basis for which partial summary judgment was granted for Ruiz – that the thirty-day impoundment of his vehicle violated the Fourth Amendment, regardless of the validity of its initial seizure. Defendant Sonoma County cross-moves for partial summary judgment on this issue. Both Plaintiffs also move to certify classes of similarly situated individuals against the City of Santa Rosa and County of Sonoma Defendants.

**LEGAL STANDARD**

**I.  Summary Judgment**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* At the summary judgment stage, the court may not weigh the evidence and must view it in the light most favorable to the nonmoving party. *Id.* at 255.

**II.  Class Certification**

Class certification is governed by Federal Rule of Civil Procedure 23. Rule 23(a) requires that a party seeking certification demonstrate that:

> 1) the class is so numerous that joinder of all members is impracticable;
> 2) there are questions of law or fact common to the class;
> 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

While Rule 23(a) does not expressly require a class to be ascertainable, courts have read the rule to imply this additional requirement. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010) (abrogated on other grounds by *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 755 n.7 (9th Cir. 2012)).

A party seeking certification must also demonstrate that the suit falls into one of the categories of class actions set out within Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Subsection (b)(1) allows certification where "prosecuting separate actions . . . would create a risk of: (A) inconsistent or varying adjudications . . . or (B) adjudications . . . that, as a practical matter, would be dispositive

of the interests of the other members not parties to the individual adjudications . . . ." Fed. R. Civ. P. 23(b)(1).  Subsection (b)(2) applies where the defendant acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate."  Fed. R. Civ. P. 23(b)(2).  Subsection (b)(3) applies where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

**DISCUSSION**

**I.   The Warrantless Impoundment of Plaintiff Mateos-Sandoval's Vehicle for Thirty Days Violated the Fourth Amendment**

**a.   The warrantless impoundment of Plaintiff Mateos-Sandoval's vehicle for thirty days was pursuant to Sonoma County Policy**

Under *Monell v. Department of Social Services*, a municipal government may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).  In determining a local government's § 1983 liability, "[a] court's task is to 'identify those who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the . . . violation at issue.'"  *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 784-85 (1997) (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S.701, 737 (1989)).

"[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an

4

exercise of that discretion." *Id.* at 481-82. Rather, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483. Evidence that a law enforcement organization had a custom or practice that was ratified by an authoritative policymaker can give rise to municipal liability under § 1983. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

"Whether a particular official has 'final policymaking authority' is a question of state law." *McMillian*, 520 U.S. at 786 (quotation and citation omitted; emphasis removed). "This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy." *Id.* But a court's "understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *Id.* This is not a "categorical, 'all or nothing'" inquiry; rather, the question is "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id.* at 785.

The Sonoma County Defendants argue that they are not final policymakers here, because they were merely enforcing section 14602.6, which is a state law. Summary Judgment Opp'n at 7-8 (Docket No. 272). Defendants' argument fails, because Sheriff Freitas admitted that he was a Sonoma County Sheriff's Office policymaker and because the evidence demonstrates that the relevant policy in fact originated with the Sonoma County Sheriff's Office.

While Defendants maintain that they were not policymakers with respect to the implementation of California Vehicle Code section 14602.6, their responsive pleading undermines this contention. In response to Plaintiff's allegation that Sheriff Freitas was a Sonoma County Sheriff's Office policymaker, and as such was responsible for enforcing Office policies regarding the interpretation and/or application of California Vehicle Code

5

section 14602.6, the County Defendants replied:

> In response to the allegation . . . County Defendants admit that Defendant Steve Freitas is the Sheriff-Coroner of the County of Sonoma, is a policymaker of the Sonoma County Sheriff's Office on certain issues within the legal purview of the Sheriff, and enforces its policies that are within his legal purview with respect to the application of California law, including but not limited to, California Vehicle Code § 14602.6.

County Defendants' Ans. to Third Amended Complaint ¶ 9 (Docket No. 263). It is therefore not in dispute that Sheriff Freitas is a policymaker for the County regarding those aspects of enforcing section 14602.6 that are within his "legal purview."

There are two potential "policies" at issue for purposes of this motion: the policy of impounding vehicles of drivers with foreign licenses under the purported authority of section 14602.6, and the policy of keeping a vehicle so impounded for thirty days. Defendants do not discuss the former policy, except to argue that any such policy regarding the former is irrelevant to the latter. Summary Judgment Opp'n at 11. However, this argument ignores the fact that one of the statutory grounds for releasing a vehicle early is "[w]hen the vehicle was seized under [section 14602.6] for an offense that does not authorize the seizure of the vehicle." Cal. Veh. Code § 14602.6(d)(1)(D). Defendants' policy regarding whether 14602.6 authorized the impoundment of Plaintiff's vehicle is therefore directly relevant to whether the vehicle would be kept for thirty days.

The Court concludes that Sonoma County had a local policy of interpreting section 14602.6 to authorize impoundment for vehicles driven by a driver who previously had been issued a license in a foreign jurisdiction. At his deposition, Sheriff Freitas testified that he interpreted section 14602.6 to apply to people who had been issued a driver's license in a foreign jurisdiction. Ex. A to Cook Reply Decl. at 25-26 (Docket No. 273). In response to the question of whether he understood that interpretation to be "the policy" at the time of Mateos-Sandoval's vehicle's impoundment in January of 2011, he said "Yes." *Id.* at 26. He also stated that nothing in the tow hearing report regarding the reasons for

6

denying release of Mateos-Sandoval's vehicle was contrary to policy. *Id.* at 29.

The tow hearing documents further buttress this conclusion. Among the reasons listed for denying Plaintiff's request to have his vehicle released prior to the thirty-day period, Sergeant Eaton noted that a Mexican driver's license was not valid in California for residents, and also mentioned that the vehicle had been lawfully towed in accordance with state law and Sonoma County policy. Post Storage Hearing Report, Ex. B to Cook Reply Decl. at 26. One month later, after Plaintiff's counsel appealed the decision, Defendants issued another report affirming their decision, noting in relevant part that "the tow and impound . . . were done legally and within policy." *Id.* at 27. Finally, months later, in response to a complaint lodged by Plaintiff's counsel, Sergeant Larry Doherty of the Sonoma County Sheriff's Office affirmed the decision that had been made not to release Plaintiff's vehicle prior to the thirty-day period, noting that "the deputies acted properly, in accordance with state laws and our policies." Letter from Sgt. Doherty, Ex. E to Cook Reply Decl. at 35.

The Court has already determined that the "never been licensed" provision in section 14602.6 cannot be interpreted to apply to a driver who received a license in a foreign jurisdiction. December 6, 2012 Order at 18-19 (Docket No. 50). Defendants' position that Mateos-Sandoval's vehicle was held for thirty days pursuant to California Vehicle Code section 14602.6, even though the section did not apply to him, therefore was a result of their own policy or practice of interpreting California Vehicle Code section 14602.6, rather than state law itself.

The Court finds that the County had a policy of applying section 14602.6 to drivers such as Mateos-Sandoval, who had been issued a license in a foreign jurisdiction, and that this policy was the moving force of his injury. Because section 14602.6 requires a law enforcement organization to release a vehicle when the section does not authorize its impoundment, the Court finds it irrelevant whether the County also had a policy of keeping vehicles for the full thirty-days or releasing them early on a discretionary basis.

Whether or not Defendants had a policy of releasing some vehicles early, they incorrectly interpreted section 14602.6 to authorize them to keep Mateos-Sandoval's vehicle for thirty days, and that policy was the moving force behind the injury at issue in this motion.

For the reasons discussed above, the Court finds that the County Defendants were policymakers with respect to the application of California Vehicle Code section 14602.6 to drivers such as Plaintiff Mateos-Sandoval, and, further, that the impoundment of Plaintiff's vehicle for thirty days was done pursuant to Defendant's policy. The County Defendants are therefore subject to potential liability under § 1983.

### b. The Fourth Amendment applies to the prolonged impoundment of Plaintiff's vehicle

The Court previously held that the Fourth Amendment applies to Plaintiffs' claims. October 29, 2014 Order at 5-8 (Docket No. 205). The County Defendants recognize this, yet they spend five pages of briefing arguing that the Fourth Amendment does not apply in this case.[1] Summary Judgment Opp'n at 16-21. The County has not provided a convincing basis for the Court to alter its prior decision. The County's recent Ninth Circuit cases only considered seizures of the person, not seizures of property. Summary Judgment Opp'n at 16-19 (citing *Gant v. Cnty. of Los Angeles*, 772 F.3d 608 (9th Cir. 2014); *Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014); *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384 (9th Cir. 2014)). The Court does not read *Payton v. New York*, 445 U.S. 573 (1980), a decision that *recognized* Fourth Amendment protections for seizures of the person, as *limiting* Fourth Amendment protections for seizures of property in this case. As the Court previously held, the cases of *United States v. Place*, 462 U.S. 696 (1983), *United States v. Sullivan*, 753 F.3d 845 (9th Cir. 2014), and *United States v. Dass*, 849 F.2d 414

---

[1] Although Defendants effectively ask the Court to reconsider its prior order, they did not file an administrative motion requesting leave to file a motion for reconsideration, as required by Civil Local Rule 7-9(a). Nonetheless, the Court considers, and rejects, Defendants' argument.

8

(9th Cir. 1988) demonstrate that the Fourth Amendment applies to the prolonged detention of validly seized property, at least in the Ninth Circuit. October 29, 2014 Order at 5-6. These cases do not rely on the "full-blown seizure" distinction that Defendants attempt to manufacture. *Id.* at 7-8. Plaintiff Mateos-Sandoval may therefore bring this claim under the Fourth Amendment.

### c. The thirty-day impoundment of Plaintiff Mateos-Sandoval's vehicle violated the Fourth Amendment

This Court previously held that the thirty-day impoundment of Ruiz's vehicle was unreasonable, and therefore violated the Fourth Amendment. October 29, 2014 Order at 17. As discussed below, the facts of Mateos-Sandoval's impoundment are similar to those presented by Ruiz in the previous cross-motions for partial summary judgment, and, in some places, even more favorable for Mateos-Sandoval. Thus, the Court comes to the same conclusion here: the thirty-day impoundment of Mateos-Sandoval's vehicle was unreasonable and violated the Fourth Amendment.

As the Court previously noted, in evaluating whether a prolonged seizure of property is reasonable under the Fourth Amendment, a court will "balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Sullivan*, 753 F.3d at 855 (9th Cir. 2014) (quoting *Place*, 462 U.S. at 703). "Such determinations are made on a case-by-case basis." *Sullivan*, 753 F.3d at 855.

The Court previously recognized that "[a]n individual has a significant interest in possessing the vehicle he owns," because, "[f]or many people, the use of a car is essential for such necessary activities as getting to work and purchasing food." Oct. 29, 2014 Order at 17-18. At the same time, the Court recognized that a resident of California who lacks a valid driver's license cannot legally drive in the state, and so such individuals have a

1  "somewhat reduced interest in the possession of [their] vehicle[s] . . . at least until [they]
2  obtain[] a California license." *Id.* at 18.

3        A comparison between the facts of the two Plaintiffs' scenarios illustrates why it
4  was unreasonable to impound Mateos-Sandoval's vehicle in this case. Both Plaintiffs
5  appear to have been residents of California without a valid California license. Ex. A Part 1
6  to Jackson Decl. at 19 (Docket No. 195-1); *see also* Ex. B to Cook Reply Decl. at 31. Both
7  Plaintiffs used their vehicles to drive to work. Ex. A Part 2 to Jackson Decl. at 17 (Docket
8  No. 195-2); *see* also Ex. D to Keck Decl. at 54 (Docket No. 198). At the time of his
9  September 1, 2011 traffic stop and subsequent vehicle impoundment, Ruiz had never
10 applied for a California driver's license, and the Mexican license he was carrying at the
11 time had been expired for over a year and a half. Ex. A Part 1 to Jackson Decl. at 6, 12.
12 Mateos-Sandoval, on the other hand, had previously attempted to obtain a California
13 license, and was carrying a valid Mexican license at the time of his vehicle's
14 impoundment. Ex. D to Keck Decl. at 47; *see also* Sonoma County Sheriff's Office
15 Vehicle Release Authorization, Ex. D to Cook Sandoval Summary Judgment Decl. at 35
16 (Docket No. 185-2).

17       Additionally, both Plaintiffs promptly contested the impoundment of their vehicles
18 by seeking a tow hearing. Ruiz challenged the impoundment of his vehicle in person at the
19 Santa Rosa Police Department on September 2, 2011, and was informed by the front
20 counter without having held a tow hearing that his vehicle would not be released for thirty
21 days. Santa Rosa Police Department Record, Ex. D to Jackson Decl. at 1-3 (Docket No.
22 195-3). Likewise, Mateos-Sandoval attempted to retrieve his vehicle prior to the thirty-day
23 impoundment period and was repeatedly denied a tow hearing. After multiple attempts
24 and with the assistance of his attorney, Mateos-Sandoval was eventually given a tow
25 hearing which was conducted over the phone on February 2, 2011 – six days after his
26 vehicle's January 27, 2011 impoundment. Ex. C to Cook Reply Decl. at 33. Counsel

requested the release of Plaintiff's vehicle on several grounds, all of which were denied. *Id.*

After the thirty-day period, Ruiz paid the administrative and storage fees and took possession of his vehicle. Ex. D to Cook Ruiz Summary Judgment Decl. at 33 (Docket No. 187). Mateos-Sandoval had his friend take possession of the vehicle after paying roughly $2,000 in fees. Sonoma County Sheriff's Office Vehicle Release Authorization, Ex. D to Cook Sandoval Summary Judgment Decl. at 35-37.

Finally, Ruiz had a few blemishes on his driving record at the time of his impoundment, such as driving without a license, driving with a child outside of a seatbelt, and not coming to a complete stop at a stop sign. Ex. A Part 1 to Jackson Decl. at 10, 13; *see also* Ex. A Part 2 to Jackson Decl. at 5. There is no evidence that Mateos-Sandoval had anything other than a clean driving record at the time of his vehicle's impoundment. Summary Judgment Reply at 4-5.

In short, for virtually all of the factors that the Court has considered, the thirty-day impoundment of Mateos-Sandoval's vehicle was even more unreasonable that the impoundment of Ruiz's. The Court has already determined that the thirty-day impoundment of Ruiz's vehicle violated the Fourth Amendment. After considering the individual circumstances of the thirty-day impoundment of Mateos-Sandoval's vehicle, the Court concludes that this impoundment also violated the Fourth Amendment. Plaintiff's motion for partial summary judgment is therefore GRANTED, and the County Defendants' cross-motion for partial summary judgment is DENIED.

## II. Plaintiffs Fail to Satisfy the Rule 23(a) Requirements for Class Certification

In this renewed motion for class certification, Plaintiffs still have not satisfied Rule 23(a)'s requirements. The party seeking certification carries the burden of demonstrating that Rule 23 has been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "A party seeking class certification must affirmatively demonstrate his compliance

11

with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* (quotation omitted).

As discussed below, Plaintiffs satisfy the numerosity requirement of Rule 23(a) for their proposed "Impound Without a Warrant" classes, but not for their proposed sub-classes. They also fail to meet the commonality and typicality requirements of Rule 23(a). As a result, the Court does not reach the questions of whether Plaintiffs also meet the adequacy requirement of Rule 23(a), or the judicially created ascertainability requirement, or whether the proposed classes would meet any of the requirements of Rule 23(b).

**a. Plaintiffs' proposed classes are numerous but the proposed sub-classes are not**

Plaintiffs must show that the class is sufficiently numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). "The ultimate issue in evaluating this factor is whether the class is too large to make joinder practicable, but courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Intern., Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (citation omitted). Although Plaintiffs do not need to "show the number of potential class members with certainty[,] . . . any common sense inferences that plaintiffs urge the court to make [must] be based upon something other than rank speculation untethered to real facts." *Id.* at 550. A class may be divided into subclasses that are each treated as a class. Fed. R. Civ. P. 23(c)(5). If the court divides the class into subclasses then each subclass must independently meet the class action requirements. *Bates v. United Parcel Service*, 204 F.R.D. 440, 443 (N.D. Cal. 2001) (citation omitted).

Here, Plaintiffs demonstrate that the Sonoma County "Impound Without Warrant" class and the Santa Rosa "Impound Without Warrant" class, defined below, are both plenty

numerous. The proposed classes are identical except for the named defendant:

> "All persons whose vehicles were seized and impounded by [either the Sonoma Sheriff's Department or the Santa Rosa Police Department] without a warrant and under the purported authority of § 14602.6, at any time from December 2, 2009, up through the present, where (a) the vehicle's driver was issued a citation from driving without a valid license (Cal. Veh. Code § 12500), and (b) the driver was not driving on a suspended, revoked or restricted driver's license, or driving while intoxicated. Class damages exclude damages for the vehicle's initial seizure and removal from the street."

Class Cert. Mot. at 2 (Docket No. 265-1).

Plaintiffs produce public records indicating that 1,157 vehicles were impounded by Sonoma County officials for thirty days pursuant to § 14602.6(a)(1) where the driver was unlicensed but not driving on a suspended or revoked license, or driving while intoxicated. Cook Class Cert. Decl. ¶ 8 (Docket No. 265-2). For Santa Rosa, the number of vehicles is 1,290. *Id.* ¶ 12. These numbers are well above the 40-member threshold that courts generally use to evaluate numerosity.

Plaintiffs also move to certify a "Foreign License" sub-class for each of the main classes that include the additional requirement that "the driver, as of the date of the seizure, had been issued a driver's license from any jurisdiction, foreign or domestic." Class Cert. Mot. at 5. Plaintiffs seek to make the sub-classes "opt-in" classes whereby "prospective class members can attest whether the vehicle's driver had been issued a foreign license." *Id.* Under such an approach, it would be unclear until after certification whether the sub-classes would independently meet the numerosity requirement. Plaintiffs assert that, "it is reasonable to assume the number [of sub-class members] is well in excess of that needed for class certification." *Id.* In actuality, Plaintiffs are not aware of any potential class members (other than Ruiz and Mateos-Sandoval) that fit into their proposed sub-classes. *Id.* at 8. Plaintiffs' assumption that the sub-classes are numerous is based on nothing more than "rank speculation" and, thus, Plaintiffs have failed to demonstrate that the sub-classes are numerous.

13

Therefore, Plaintiffs have demonstrated numerosity as required by Rule 23(a)(1) for the "Impound Without Warrant" classes but have failed to show numerosity for the sub-classes.

**b. Plaintiffs fail to show commonality**

Plaintiffs have failed to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court made clear in the *Wal-Mart* case, commonality requires "a common contention . . . that is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. "'[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case.'" *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) (quoting *Cooper v. California*, 386 U.S. 58, 59 (1967)).

In *Miranda v. Bonner*, 2012 WL 10972131 (C.D. Cal. Jan. 31, 2012), the court refused to certify a class of individuals challenging impound decisions for lack of commonality. *Id.* at *5. Applying *Wal-Mart*, the court held that "other than alleging that they have all suffered from a violation of the same [impoundment] statute, Plaintiffs have not demonstrated that a class-wide proceeding will generate common answers." *Id.* "Similar to the plaintiffs in *Wal-Mart*, the purported class here seeks to sue Defendants about hundreds, if not thousands, of impoundment decisions all at once, each of which requires a detailed factual analysis of the reasonableness of the impound." *Id.*

Plaintiffs' theory is that Defendants' Fourth Amendment justifications for the warrantless thirty-day impoundments, as distinguished from the vehicle's initial seizure and removal from the street, will *not* turn on the individual circumstances underlying an officer's decision to seize the vehicle and remove it from the street. Mot. at 2. Plaintiffs, however, continually fail to acknowledge that the circumstances of each impoundment and

14

subsequent decision to release a vehicle are different in each case.

For potential class members such as Ruiz and Mateos-Sandoval, it was unreasonable for the City or County to hold their vehicles for thirty days, only to return them after that time; these plaintiffs had friends or agents with valid California driver's licenses available to take possession of the vehicle at the time of impoundment or shortly thereafter, and they did not have serious violations on their driving record. *See supra*; October 29, 2014 Order at 1-3. However, for other potential class members, it might not have been unreasonable for the City to impound a vehicle for thirty days, for instance if the owner of the car had never been licensed to drive in any jurisdiction, did not have a California-licensed driver available to take possession of the car, and had a driving record that included multiple, dangerous violations. The fact that this single question of Fourth Amendment reasonableness could be answered differently for these different potential class members demonstrates that Plaintiffs have not shown commonality.

Plaintiffs seek a holding in line with the ruling in Ruiz and Mateos-Sandoval's cases that the warrantless thirty-day impoundment was unreasonable for an entire class, but Plaintiffs have failed to demonstrate that the factual elements making up the claims of all the class members are sufficiently common to the specific set of facts in Ruiz or Mateos-Sandoval's cases. Plaintiffs argue that once a vehicle is seized and removed from the street pursuant to section 14602.6, a threshold has been crossed and justification for all impounds will be identical. Mot. at 4. The Court rejects this theory. Since the facts surrounding each impound are different, even after the vehicle has been removed from the street, there is not a question here common to all class members that can be resolved with a single stroke. Thus, Plaintiffs have failed to satisfy the requirements of Rule 23(a)(2).

**c. Plaintiffs fail to show typicality**

Plaintiffs have also failed to show that their own claims are typical of the class that they seeks to represent, as required by Rule 23(a)(3). "The test of typicality is whether

15

1  other members have the same or similar injury, whether the action is based on conduct
2  which is not unique to the named plaintiffs, and whether other class members have been
3  injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617
4  F.3d 1168, 1175 (9th Cir. 2010) (quotation omitted). "The commonality and typicality
5  requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147,
6  157 n.13 (1982).

7  Where "a major focus of the litigation will be on a defense unique to" the class
8  representative, the representative "fails to satisfy the typicality requirement of Rule 23(a)."
9  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

10  Plaintiffs rely on the theory that because their class definitions do not hinge on the
11  circumstances surrounding the initial seizure and removal of a vehicle and thus, there is no
12  need for a case-by-case consideration of the seizure for each vehicle under the community
13  caretaking exception, they have satisfied the typicality requirement. Mot. at 8. The Court
14  rejected this argument in its discussion regarding commonality, above. While the Court
15  agrees that the community caretaking analysis is of somewhat limited application here,
16  such as in cases where a class member would not have a licensed driver to take possession
17  of the car within the thirty-day impoundment period, this fact alone does not demonstrate
18  typicality.

19  Moreover, Plaintiffs proposed class definition is too broad. The classes include all
20  people who have had their vehicles impounded by Defendants for driving without a valid
21  license pursuant to section 14602.6. Mot. at 2. Despite Plaintiff's insistence on referring
22  to impounds under section 14602.6 as "30 day impounds," these classes include not only
23  people who actually had their vehicles held in impound for thirty days but also people who
24  were able to retrieve their vehicles prior to the end of the thirty-day period. Somebody
25  who had her car impounded for fifteen days has not suffered the same injury as somebody
26  who had his car impounded for thirty days; this question goes to more than just damages,
27  because whether a particular prolonged seizure is unreasonable under the Fourth

16

Amendment depends on its duration. Moreover, some of the proposed class members may have been able to retrieve their vehicles in a matter of only a few days. Whereas this Court found that the impoundment of Ruiz and Mateos-Sandoval's vehicles for thirty days was unreasonable under their circumstances, the analysis and conclusions may have been different if the impoundments had been for only a few days.

Therefore, Plaintiffs have not shown that the claims and injuries of Ruiz and Mateos-Sandoval are typical of the claims and injuries of the other class members. Thus, Plaintiffs fail to meet the requirements of Rule 23(a)(3).

### d. The Court does not reach the remaining Rule 23 factors

Because Plaintiffs partially fail on one of the first three Rule 23(a) factors, and completely fail on the other two, the Court does not consider whether they would serve as adequate class representatives under Rule 23(a)(4), whether the proposed class members are ascertainable, or whether they can satisfy any of the Rule 23(b) requirements.

### CONCLUSION

For the reasons stated above, Plaintiff Mateos-Sandoval's motion for partial summary judgment is GRANTED. Defendant County of Sonoma's cross-motion for partial summary judgment is DENIED. Plaintiffs' motion for class certification is DENIED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: 07/09/15   _____
THELTON E. HENDERSON
United States District Judge